J-A09042-16

2016 PA Super 150

| | |
|---|---|
| KEVIN DONALDSON, AS ADMINISTRATOR OF THE ESTATE OF SARAH C. DONALDSON, DECEASED AND KEVIN DONALDSON, AS ADMINISTRATOR OF THE ESTATE OF SARAH C. DONALDSON, ON BEHALF OF MICHAEL DONALDSON AND PAMELA DOUGLAS, NATURAL PARENTS AND STATUTORY HEIRS OF DECEDENT SARAH C. DONALDSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| DAVIDSON BROTHERS, INC., MICHAEL R. DAVIDSON, AND GEORGE E. DONLEY | |
| Appellees | |
| v. | |
| LJF, INC., AND WILBERT QUADE | |
| Appellants | No. 1419 MDA 2015 |

Appeal from the Order Entered July 24, 2015
in the Court of Common Pleas of Centre County
Civil Division at No.: 2008-3973-CD

BEFORE: FORD ELLIOTT, P.J.E., JENKINS, J., and PLATT, J.[*]

OPINION BY PLATT, J.:                    **FILED JULY 14, 2016**

Appellant, LJF, Inc. (LJF) and Wilbert Quade, appeal from two orders

of the trial court in this complicated case arising out of a fatal three-way

_____

[*] Retired Senior Judge assigned to the Superior Court.

motor vehicle accident.[1]  The first order, on June 1, 2010, sustained the preliminary objections of Plaintiff/Appellee, Kevin Donaldson, Administrator of the estate of his sister, Sarah Donaldson (the Donaldson interests), and dismissed LJF's counterclaim with prejudice.  The second order, dated July 22, 2015 and filed July 24,[2] granted the motion for judgment on the pleadings of Davidson Brothers, Inc., Michael R. Davidson, and George E. Donley[3] (the Davidson interests), Defendants/Appellees, and dismissed LJF's cross-claims against the Davidson interests with prejudice.  The orders of dismissal rejected LJF's loss of contract claim.  LJF maintains that the trial court's reliance on the Economic Loss Doctrine to reject the loss of contract claim was improper.  LJF asks us to reverse the decisions of the trial court and remand for further proceedings.  Plaintiff/Appellee Donaldson and defendants/Appellees have each separately filed motions to dismiss this appeal.  We decline to dismiss.  However, we affirm the trial court's orders, albeit for reasons other than those relied on by the trial court.

---

[1] We note that although Wilbert Quade is identified in the caption as a co-Appellant, the Appellant brief is in fact submitted on behalf of LJF.  We discern no separate issues pertinent to Mr. Quade before us on review.

[2] Although this order is dated July 22 and referred to as such, the record confirms that the order was filed, time-stamped and docketed on July 24. We have amended the caption accordingly.

[3] Mr. Donley's surname is alternately spelled "Donely" in the record.

This case has what a predecessor panel has characterized as a "remarkably complex procedural history." (**Donaldson v. Davidson**, No. 293 MDA 2013, unpublished memorandum at *2 (Pa. Super. filed June 3, 2014).[4]  We summarize only the facts and history most pertinent to the issues before us on review.

The underlying suit arises out of a tragic three-way motor vehicle accident on June 16, 2008, on Route 322 in Potter Township, Centre County which resulted in a fatality.  There is no dispute that George Donley, operator of a tractor/trailer owned by Davidson Brothers, was driving westbound behind Sarah Donaldson when his tractor/trailer rear-ended her vehicle.[5]  As a result of the impact, Ms. Donaldson's car was thrust into eastbound oncoming traffic.  There, she collided head-on with a tractor/trailer owned by LJF and operated by Wilbert Quade.  Ms. Donaldson died from her injuries.

_____

[4]  For a more detailed recitation of the facts and procedural history in the underlying case we respectfully refer the reader to **Donaldson v. Davidson**, **supra**, which adopts the factual summary in a companion case, **LJF, Inc. v. Davidson Bros., Inc.**, No. 1840 MDA 2011, unpublished memorandum at *1-*3 (Pa. Super. filed September 25, 2012).

[5] The parties do dispute causality.  The Donaldson interests maintain that the original collision was caused by Donley's negligence.  The Davidson interests maintain that the collision occurred when Sarah Donaldson attempted to change lanes, and then abruptly tried to return to her original lane.  LJF alleges that Ms. Donaldson's negligence contributed to or caused her fatal injuries.

Kevin Donaldson, Sarah's brother and Administrator of her estate, filed a complaint on September 16, 2008. On April 30, 2009, he filed an amended complaint, which brought wrongful death and survivor actions against the Davidson interests. The Davidson interests later joined LJF and Mr. Quade as additional defendants, essentially alleging that negligence by Mr. Quade caused or contributed to the death of Ms. Donaldson.

Of special note for this appeal, on October 9, 2009, LJF settled property claims with the Davidson interests, their insurer and their attorneys, for $15,181.00. (***See*** Property Damage Release and Settlement Agreement," 10/09/09). The release was signed by Leo C. Frailey "[a]s [d]uly authorized agent/representative for LJF, Inc." (***Id.*** at 2). Specifically, the release and settlement agreement "remise[d], release[d] and forever discharge[d] Northland Insurance Company, Davidson Brothers, Inc., Michael R. Davidson, George E. Donley, and Rawle & Henderson LLP[.]" (***Id.*** at 1). The release and settlement agreement further encompassed:

> [T]heir successors, assigns, associates, heirs, executors, administrators, and/or all other persons, firms, corporations, of and from any and every claim, demand, right, or cause of action, involving property damage, down-time, clean-up, repairs, towing, and all other non-injury related costs, expenses, and/or fees (**with the exception of any claim for loss of contract which is hereby preserved**) on account of or in any way growing out of, an incident or event which occurred on or about June 16, 2008 on Route 322 west of the town of Potters Mills, Potter Township, Centre County, Pennsylvania, and set forth and described in the resulting lawsuit[.]

(***Id.***) (emphasis in original).

On October 29, 2009, LJF, in its Answer and Counterclaim to the joinder complaint, asserted liability claims against the Donaldson interests as well as the Davidson interests including, *inter alia*, a claim for "loss of contract." (Answer of Additional Defendants, Counterclaims, ¶ 69(l)). Donaldson filed preliminary objections. The trial court sustained Donaldson's preliminary objections and dismissed LJF's counterclaim with prejudice.

LJF appealed but a panel of this Court quashed the appeal as interlocutory, reasoning that "[b]ecause the June 1, 2010 order did not dispose of LJF's cross-claim against Davidson Brothers, the order [was] not a final order for purposes of appeal." (**Donaldson**, **supra** at *12).

The Davidson interests filed a motion for judgment on the pleadings, which the trial court granted, on July 24, 2015. The trial court denied reconsideration.[6] This timely appeal followed.[7]

Appellant raises eight questions on appeal:

_____

[6] It bears noting that in a separate action, on July 24, 2009, LJF had filed essentially over-lapping claims against the Davidson interests. **See LJF, Inc. supra** at *1-*3. This Court affirmed the trial court's order sustaining the Davidson interests' preliminary objections, and dismissing LJF's claim with prejudice. (**See id.** at *13). The **LJF** panel reasoned that collateral estoppel barred LJF's loss of contract claim and damages cause of action against the Davidson interests in the second case because the trial court had decided those claims adversely to LJF on the merits in the instant case, after a full and fair opportunity to litigate the issue. (**See id.** at *9-*10).

[7] Appellant filed a statement of errors complained of on appeal, on September 21, 2015. The trial court filed a Rule 1925(a) statement, on October 22, 2015, referencing its opinion and order of June 1, 2010. **See** Pa.R.A.P. 1925.

1. Whether Appellant LJF, Inc. properly pleaded the occasioning of property damage to its tractor-trailer combination so as to exclude the application of the economic loss doctrine defense as a bar Appellant's [sic] claims for loss of contract damages[?]

2. Whether, under the facts and circumstances of this case, the economic loss doctrine bars Appellant LJF, Inc.'s claims and damages for loss of contact [sic] [?][8]

3. Whether Appellant, LJF, Inc.'s release of property damage claims, via partial release and settlement agreement, should preclude LJF, Inc. from seeking economic losses due to loss of a contract, which resulted from property damage that was sustained in a motor vehicle collision[?]

4. Whether admissions in pleadings and provisions of a partial settlement/release agreement, which admit the occurrence of property damage in a civil action, precludes the application of the economic loss doctrine[?]

5. Whether a provision contained within a partial settlement/release agreement, which specifically and expressly reserves a releasor's right to assert claims for loss of contract arising from a motor vehicle collision, precludes the application of the economic loss doctrine to bar said claims[?]

6. Whether Plaintiff-Appellees, who were not a parties [sic] or signators to the partial release and settlement agreement, may present such agreement as the basis for asserting the economic loss doctrine as a defense to loss of contract damage claims set forth against it[?]

7. Whether the economic loss doctrine is an affirmative defense that is waived if not raised by Preliminary Objection and/or New Matter[?]

_____

[8] We observe that Appellant intermittently but repeatedly refers to "loss of contact" instead of "loss of contract" throughout the brief. (***See, e.g.***, Appellant's Brief at 16, 17, n.3 at 20, 22, *etc.*).

8. Whether the law of the case doctrine was properly applied to bar Appellant LJF, Inc.'s loss of contract claims against Defendant-Appellee[?]

(Appellant's Brief, at 4-5).

LJF maintains that the trial court erred in granting the preliminary objections of the Donaldson interests and the motion for judgment on the pleadings of the Davidson interests. (*See id.* at 16-17).

The central issue underlying all of LJF's questions, explicitly in the first seven and implicitly in the eighth, (*see id.* at 26), is whether an otherwise general release which expressly reserved a "loss of contract" claim adequately preserved that issue, or if it is barred by the Economic Loss Doctrine.[9]  LJF argues that the Economic Loss Doctrine does not apply.

Further, LJF posits that the Law of the Case Doctrine should not apply to enforce the Economic Loss Doctrine.  LJF suggests that this Court should

_____

[9] Nevertheless, it bears noting that Appellant's brief does not present and develop eight arguments in support of the eight questions raised.  Appellant presents **four** arguments.  (*See* Appellant's Brief, at 19, 22, 24, and 26; *see also id.* at 18-26).  Appellant thus fails to comply with Pa.R.A.P. 2119, which in relevant part provides:

> **General rule.**  The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).

reverse the orders sustaining the preliminary objections and granting judgment on the pleadings and remand to the trial court for further proceedings on loss of contract. (*See id.* at 26-27). We disagree.

Our standard of review for the sustaining of preliminary objections is well-settled.

> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

*Floors, Inc. v. Altig*, 963 A.2d 912, 915 (Pa. Super. 2009), *appeal denied*, 980 A.2d 608 (Pa. 2009) (citation omitted).

> As a trial court's decision to grant or deny a demurrer involves a matter of law, our standard for reviewing that decision is plenary. Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. Moreover, when considering a motion for a demurrer, the trial court must accept as true "all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts."

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (citations omitted). Similarly,

> The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Thus, our scope of review is plenary and our standard of review mirrors that of the trial court. Accepting all material

- 8 -

averments as true, we must determine whether the complaint adequately states a claim for relief under any theory of law.

*Homziak v. GE Capital Warranty Corp*., 839 A.2d 1076, 1079 (Pa. Super. 2003) (citations and internal quotation marks omitted), *appeal denied*, 860 A.2d 490 (Pa. 2004).

"When reviewing a grant of a demurrer, we are bound neither by the inferences drawn by the trial court, nor by its conclusions of law." *Sclabassi v. Nationwide Mutual Fire Insurance Co.*, 789 A.2d 699, 701 (Pa. Super. 2001), *appeal denied*, 797 A.2d 915 (Pa. 2002) (citation and internal quotation marks omitted). "[P]reliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; **no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer**." *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 883 (Pa. Super. 2000) (citation omitted) (emphasis added).

Our standard of review for the grant or denial of judgment on the pleadings is equally well-settled.

> The standard to be applied upon review of a motion for judgment on the pleadings accepts all well-pleaded allegations of the complaint as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Tucker v. Philadelphia Daily News*, 848 A.2d 113, 131 (Pa. 2004) (citation and internal quotation marks omitted).

Entry of judgment on the pleadings is permitted under Pa.R.C.P. 1034 which provides for such judgment after the pleadings are closed, but within such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.

*Citicorp North America, Inc. v. Thornton*, 707 A.2d 536, 538 (Pa. Super. 1998) (citations omitted). Likewise,

Our scope and standard of review in appeals of a grant or denial of a motion for judgment on the pleadings is well-settled. This Court applies the same standard as the trial court and confines its consideration to the pleadings and documents properly attached thereto. We review to determine whether the trial court's action respecting the motion for judgment on the pleadings was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. We will affirm the grant of judgment on the pleadings only if the moving party's right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise.

*Municipality of Mt. Lebanon v. Reliance Ins. Co.*, 778 A.2d 1228, 1231 (Pa. Super. 2001) (citations and quotation marks omitted).

Here, we agree with Appellant that a cause of action was not barred by the Economic Loss Doctrine. The Economic Loss Doctrine provides that no cause of action exists for negligence that results **solely** in economic damages unaccompanied by physical injury or property damage. "Purely economical [sic] loss, when not accompanied with or occasioned by injury, is

- 10 -

considered beyond the scope of recovery even if a direct result of the negligent act." **Margolis v. Jackson**, 543 A.2d 1238, 1240 (Pa. Super. 1988) (citation omitted).

Our Supreme Court has recognized the applications and limitations of the Economic Loss Doctrine. **See Excavation Techs., Inc. v. Columbia Gas Co. of Pennsylvania**, 985 A.2d 840, 842-43 (Pa. 2009) (recounting roots and deciding applicability of Economic Loss Doctrine); **see also Aikens v. Balt. and Ohio R.R. Co.**, 501 A.2d 277, 278-79 (Pa. Super. 1985) (holding manufacturing plant employees who did not suffer personal injury or property damage from train derailment which damaged plant could not seek damages for lost wages); **Margolis**, **supra** at 1240 (affirming denial of recovery at law against third party negligent tortfeasor for loss of expected profits as indirect result of negligent incapacitation of claimants' business partner).

In **Aikens**, this Court traced the roots of the Economic Loss Doctrine to **Robins Dry Dock & Repair Co. v. Flint**, 275 U.S. 303 (1927). **See Aikens**, **supra** at 279. In **Robins** the United States Supreme Court decided that a charterer of a steamship could not recover damages for loss of use of the ship caused by the negligence of the company repairing the ship. Writing for the High Court, Mr. Justice Holmes stated:

> [N]o authority need be cited to show that, as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another **merely** because the injured

person was under a contract with that other unknown to the doer of the wrong.

*Id.* at 309 (emphasis added).

In this case, the trial court found that the allowance of damages to LJF for its loss of contract claims would be counter to public policy. (**See** Trial Court Opinion, 6/01/10, at 2-3). It reasoned that claims for economic losses "such as loss of contract, are not a foreseeable result of negligence," citing **Aikens**.[10] (**Id.** at 3). Further, the court stated, even if there had been claims for property damage at one time, once LJF signed the release, "it is impossible for the [trial c]ourt to determine whether they actually existed." (**Id.**).

In effect, the court syllogizes that if property claims are settled in a release, they become undeterminable to the trial court. If they cannot be determined, then they do not exist. If they do not exist, then LJF's loss of contract claim is solely for economic damages, and prohibited by the Economic Loss Doctrine. We are constrained to disagree.

_____

[10] In **Aikens**, this Court concluded:

Therefore, negligent harm to economic advantage **alone** is too remote for recovery under a negligence theory. The reason a plaintiff cannot recover stems from the fact that the negligent actor has no knowledge of the contract or prospective relation and thus has no reason to foresee any harm to the plaintiff's interest.

**Aikens**, **supra** at 279 (emphasis added) (citations omitted).

First, the trial court's reliance on public policy as articulated in **Aikens** is misplaced and unsupportable. Neither **Aikens**, nor any of the remaining principal cases cited by the trial court as controlling authority, address or consider the effect of a release on the predicate condition of no claim for personal injury or physical damage.

Put another way, the policy in **Aikens** addresses the consequences when the claim **is** solely for economic losses. It does not address, let alone decide, under what alternative conditions a claim **may be considered** "solely" for economic losses, specifically, **if** a settlement and release "undoes," or renders indeterminable, whether a property damage claim pre-existed the release.

In this case, it is beyond serious dispute that **some** property damage occurred, as plainly supported by the claims of record, without substantive objection. We are constrained to conclude that the trial court erred in assuming it had the authority or discretion to disregard that property damage under the guise of applying public policy, or to extend the Economic Loss Doctrine beyond the plainly stated pre-conditions established in the controlling authority. None of the case law cited by the trial court supports its conclusion.

Furthermore, the trial court's invocation of public policy is unavailing for another reason. Our Supreme Court, in the context of reviewing a contract of insurance, has explained:

Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy . . . Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts . . . contrary to public policy. The courts must be content to await legislative action.

**Hall v. Amica Mut. Ins. Co.,** 538 Pa. 337, 347, 648 A.2d 755, 760 (1994). **Id.** at 347-48, 648 A.2d at 760 (citations omitted). This Court has further elaborated that:

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].

**Mamlin v. Genoe**, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941).

**Eichelman v. Nationwide Ins. Co.**, 711 A.2d 1006, 1008 (Pa. 1998).

Here, except for a single, bare citation to **Aikens**, the trial court presented no controlling authority in support of its claim of public policy considerations. The **Aikens** reference, which already assumes that the loss is solely economic, is distinguishable. The trial court erred in its interpretation of the law. Because we agree with LJF's claim that the Economic Loss Doctrine does not apply, we need not address the numerous alternative assertions made in support of that conclusion, and we decline to do so. Nevertheless, the trial court's misapplication of the Economic Loss Doctrine does not end our inquiry.

- 14 -

The only substantive underlying issue in this appeal is whether LJF is entitled to pursue its claim for loss of contract. (**See** Appellant's Brief, at 17; **see also** Answer of Additional Defendants, Counterclaims, ¶ 69(j)).[11] On independent review, we conclude that LJF failed to present a well-pleaded allegation of loss of contract. A generic, barebones claim of "loss of contract," — never clarified or explained in eight years of legal dispute — is legally insufficient and would not warrant submission to a jury.

> Pennsylvania is a fact-pleading state. As a minimum, a pleader must set forth concisely the facts upon which his cause of action is based. The complaint must not only apprise the defendant of the claim being asserted, but **it must also summarize the essential facts to support the claim.** *Landau v. Western Pennsylvania National Bank*, 445 Pa. 217, 282 A.2d 335, 339 (1971) ("The purpose of [Rule 1019] is to require the pleader to disclose the 'material facts' sufficient to enable the adverse party to prepare his case.") (citation omitted).

> Rule 1019(a) requires that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.C.P. 1019(a). "Each cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief." *Id.*, 1020(a) . . . . The necessary material facts that must be alleged for such an action are simple: there was a contract, the defendant breached it, and plaintiffs suffered damages from the breach. *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. 2005) ("To successfully maintain a cause of action for breach of contract the plaintiff must establish: (1) the existence of a contract, **including its essential terms**, (2) a breach of a duty imposed by the contract, and (3) resultant damages.") (citations

---

[11] We recognize that LJF also maintains that it is entitled to "interest on all of the above damages, costs and expenses[,]" including the loss of contract claim. (Answer of Additional Defendants, Counterclaims, ¶ 69(l)).

omitted). . . . In Count III, we find none of the necessary elements of a contract action. Count III does not allege the existence of a contract—it references "the Plan" but that is far short of alleging there was a contract between the parties. Likewise absent is any allegation the City breached a contractual duty, or that damages resulted from that breach.

*McShea v. City of Philadelphia*, 995 A.2d 334, 339-40 (Pa. 2010) (some citations and capitalization omitted; emphases added); *see also Lerner v. Lerner*, 954 A.2d 1229, 1240 (Pa. Super. 2008) (sustaining appellee's preliminary objections and dismissing with prejudice appellant's complaint, albeit on different grounds).

"The purpose of [Pa.R.C.P. 1019(a)] is to require the pleader to disclose the 'material facts' sufficient to enable the adverse party to prepare his case." *Landau v. W. Pennsylvania Nat. Bank*, 282 A.2d 335, 339 (Pa. 1971) (citations omitted). "In the instant case, the single, vague and conclusory allegation that the mortgagee and lessee have 'conspired' to the detriment of the mortgagors falls far short of the requisite pleading of 'the material facts.'" *Id.* at 340.

While it is impossible to establish precise standards as to the degree of particularity required in a given situation, two conditions must always be met. The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they must be sufficient to convince the court that the averments are not merely subterfuge.

*Bata v. Cent.-Penn Nat'l Bank of Phila.*, 224 A.2d 174, 179 (Pa. 1966), *cert. denied*, 386 U.S. 1007 (1967); *accord*, *Sevin v. Kelshaw*, 611 A.2d 1232, 1234 (Pa. Super. 1992).

- 16 -

Similarly, here, we conclude that Appellant's unspecified loss of contract claim fails to disclose the material facts sufficient to enable the adverse parties to prepare their respective cases and falls far short of the requisite pleading of the material, essential facts of the claim.  On this basis alone, the trial court could properly sustain preliminary objections and grant judgment on the pleadings.

Accordingly, we affirm the court's order sustaining Appellees' preliminary objections and granting judgment on the pleadings, albeit on different grounds.  **See Devine v. Hutt**, 863 A.2d 1160, 1170 (Pa. Super. 2004) (appellate court may affirm trial court on any basis if result is correct).

Orders affirmed.  Motions to dismiss denied as moot.

President Judge Emeritus Ford Elliott joins the Opinion.

Judge Jenkins concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2016

- 17 -