J-A01042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THOMAS ALOIA AND AMY STIMSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DIAMENT BUILDING CORP. | : | No. 1621 EDA 2023 |

Appeal from the Order Entered April 14, 2023
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2021-01449

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED MARCH 11, 2024**

In this matter arising from an alleged construction defect in a personal residence, Thomas Aloia and his wife, Amy Stimson (collectively "Appellants"), appeal from the order granting a motion for judgment on the pleadings filed by Diament Building Corp. and dismissing their second amended complaint ("SAC") with prejudice. We affirm.

The trial court set forth the relevant facts, as taken from the SAC, as follows:

> The factual averments in the SAC are accepted as true for the purpose of this motion. This matter involves a home located at 1839 Horseshoe Trail, Chester Springs, Pennsylvania ("Property"). The home was completed in 2006, and an addition and finished basement were completed in 2007. A certificate of occupancy was issued on March 30, 2006, for the home. Two

---

[*] Retired Senior Judge assigned to the Superior Court.

additional certificates of occupancy were issued on February 20, 2007, one for the addition and one for the finished basement.

[Appellants] were not the original purchasers of the Property. The original purchaser's lender foreclosed on the Property and listed it for private sale. In the spring of 2016, [Appellants] were considering purchasing the Property. Mr. Aloia, a commercial construction professional, was generally aware of problems with stucco systems in newly constructed homes throughout the region. Mr. Aloia discussed his concerns with Ms. Stimson, who then shared his concerns. To assuage their concerns, Mr. Aloia contacted John Diament, owner of Diament, to inquire about the construction of the Property. According to [Appellants], "Mr. Diament personally attested to the quality of Defendant's work in constructing the Property." (SAC, ¶ 19) Having been assured by Mr. Diament that the home was built "utilizing the highest standards and best practices, consistent with professional workmanship and quality[,]" [Appellants] proceeded with their purchase of the Property. (SAC, ¶ 20)[1]

In October/November 2018, [Appellants] began to experience moisture and water infiltration in their basement and master bedroom. [Appellants] retained an engineer, who inspected the home and conducted moisture probing, and [Appellants] learned of defects in the construction of the home's exterior building envelope system. According to [Appellants], "Defendant designed and installed the Property's exterior building envelope system in a manner incompatible with, and in violation of, the requirements of the Uniform Construction Code, the International Residential Code, and the building code of West Pikeland Township[.]" (SAC, ¶ 34)

Trial Court Opinion, 4/14/23, at 2-4.

Aloia initiated this action with the filing of a writ of summons on March 5, 2021. After Diament filed a rule to file a complaint, Aloia filed his complaint

---

[1] We note that a copy of the Deed appended to Diamant's Answer and New Matter reflects that Stimson purchased the property for $1,050,000.00, on September 12, 2016. Aloia is not listed as the Grantee and Owner of the Property on the recorded Deed.

on April 29, 2021. On June 8, 2021, Diament filed preliminary objections arguing that, because Aloia did not purchase the property, he lacked standing to bring suit and that the claim was time-barred by the statute of repose. Aloia filed an amended complaint acknowledging that he is not on the deed, however, he did not include Stimson as a plaintiff to the action. Again, Diament filed preliminary objections raising the lack of standing and the statute of repose. On August 9, 2021, Aloia filed the SAC, which added Stimson as an additional plaintiff. The SAC set forth one count alleging a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1-201-9.3.2.

Diament once again filed preliminary objections, which the trial court denied. On November 8, 2021, Diament filed an answer and new matter pleading the statute of repose as an affirmative defense; Appellants then filed a reply. On February 23, 2023, Diament filed a motion for judgment on the pleadings seeking dismissal of the action based on the statute of repose. On April 14, 2023, the trial court granted Diament's motion and dismissed Appellants' SAC with prejudice. This timely appeal followed. Appellants present three issues challenging the trial court's application of the statute of repose as the basis for granting judgment on the pleadings.

When reviewing a grant of judgment on the pleadings, our scope of review is plenary, and our standard of review is *de novo*. ***See Rice v. Diocese of Altoona-Johnstown***, 212 A.3d 1055, 1061 (Pa. Super. 2019). The

- 3 -

Superior Court applies the same standard as the trial court and confines its considerations to the pleadings and documents properly attached thereto. **See Donaldson v. Davidson Bros., Inc.**, 144 A.3d 93, 101 (Pa. Super. 2016). This Court conducts review to determine whether the trial court's action respecting the motion for judgment on the pleadings was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. **See id**. The Court will affirm the grant of judgment on the pleadings if the moving party's right to succeed is certain and the case is so free from doubt that a trial would clearly be a fruitless exercise. **See id**.

Appellants first argue that the trial court erred in applying the statute of repose, which limits causes of action pertaining to lawfully performed construction. Appellants assert that the statute of repose is not applicable because Diament did not lawfully perform the construction. **See** Appellants' Brief, at 16-29. To support their claim, they note that a local ordinance in West Pikeland Township, which adopted the International Residential Code ("IRC"), renders any violation of the IRC to be "unlawful." **See id**. at 18-19. Appellants reason that the question of whether Diament violated the IRC, thereby rendering the construction unlawful and removed from the statute of repose, is a material factual issue that precludes judgment on the pleadings. Our review of this issue focuses on the meaning of the term "lawfully," as used in the operative statute.

The pertinent statute of repose in our Judicial Code provides, in relevant part, as follows.

**§ 5536. Construction projects**

**(a) General Rule.—** Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

> (1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.
>
> (2) Injury to property, real or personal, arising out of any such deficiency.
>
> (3) Injury to the person or for wrongful death arising out of any such deficiency.
>
> (4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3).

42 Pa.C.S.A. § 5536(a).

Pennsylvania courts have long recognized Section 5536 as a statute of repose, rather than a statute of limitations. *See Vargo v. Koppers Co.*, 715 A.2d 423, 426 (Pa. 1998). A statute of repose is distinct from a statute of limitations in that the former completely bars a cause of action before it arises, and the latter limits "the time in which a plaintiff may bring suit after the cause of action accrues." *Id*. at 425 (citation omitted). Moreover, our Supreme Court has long expressed that a party asserting a statute of repose defense must

show that (1) the project involved a lawful improvement to real property; (2) over 12 years have elapsed from the completion of the improvement to commencement of the action; and (3) the party is in the statute's protected class. *See Noll by Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 84 (Pa. 1994).

Recently, in *Johnson v. Toll Bros.*, 302 A.3d 1231 (Pa. Super. 2023), we addressed the question of whether an alleged violation of a building code renders the construction unlawful for purposes of application of the statute of repose. In *Johnson*, the appellants argued "that the Statute of Repose is inapplicable because [the defendant's] alleged building code violations made the construction of the home 'unlawful.'" *Id*. at 1234. We observed in *Johnson* that the term "lawfully" is undefined in the statute of repose and the parties had adopted contrary interpretations. *See id*. at 1235.

In construing the term "lawfully," the *Johnson* Court made the following observation:

> The Statute of Repose was enacted in 1976. The most recent version of Black's Law Dictionary at the time of that enactment defined "lawful" as "warranted or authorized by the law; having the qualifications prescribed by law; not contrary to nor forbidden by the law." Black's Law Dictionary, 1032 (4th ed. 1968). Elaborating further, the Note of that definition explained that "lawful" implies an act "that is authorized, sanctioned, or at any rate not forbidden, by law." *Id*. The Note then compared that latter definition to the term "legal" which implies that an act "is done or performed in accordance with the forms and usages of law, or in a technical manner[,]" going no "further than to denote compliance, with positive, technical, or formal rules[.]" *Id*.

- 6 -

*Id*. at 1235 (footnote omitted). The Court in ***Johnson*** also presented the following analogy to further explain the distinction between the terms lawfully and legally, "[i]f an individual who possesses a valid driver's license is speeding, he is not legally operating the vehicle because he is driving over the posted speed limit. Nonetheless, he is lawfully operating the vehicle because he is licensed to do so." *Id*. at 1236, n.8 (citation omitted).

After reviewing additional case law and noting that an "occupancy permit constituted evidence of record to indicate that [the builders] lawfully performed the construction," *id*. at 1236,[2] the ***Johnson*** Court reached the following conclusion:

_____

[2] We also discussed the significance of the issuance of an occupancy permit, and its ramification on the application of the statute of repose in ***Venema v. Moser Builders, Inc.***, 284 A.3d 208 (Pa. Super. 2022). Therein, we offered the following insight concerning occupancy permits:

> A residential building such as [the appellants'] residence may not be used or occupied until a certificate of occupancy is issued. The issuance of the certificate hinges on a satisfactory "final inspection" showing that the construction of the residence comports with the governing building codes. ***See*** Pennsylvania Uniform Construction Code, 34 Pa. Code § 403.65(a)-(b) ("A residential building may not be used or occupied without a certificate of occupancy issued by a building code official. A building code official shall issue a certificate of occupancy after receipt of a final inspection report that indicates compliance with the Uniform Construction Code[.]").
>
> There can be no satisfactory result to a final inspection, nor a certificate of occupancy, until construction of the residence is "completed." ***See id***. at § 403.64(f) ("A construction code official shall conduct a final inspection of the completed construction work

*(Footnote Continued Next Page)*

> [W]e find that the trial court did not err in applying the Statute of Repose despite the allegation of building code violations. **Even if Toll violated local, state or federal rules when constructing the residence, the construction was still "lawful" because Toll was authorized under the laws of the Commonwealth to do it.** There is no dispute that Toll was a licensed home builder and that a certificate of occupancy was issued by the Commonwealth when construction of the Johnsons' home was completed. Thus, the Johnsons' claims against Toll were barred by the Statute of Repose as a matter of law because they were filed over 12 years after the completion of the home's lawful construction.

*Id*. at 1236-37 (emphasis added).

In ***Venema***, we reiterated the established principle that "completion of the construction of such improvement, marks the commencement of the repose period at the point when third parties are first exposed to defects in design, planning, or construction." ***Venema***, 284 A.3d at 213 (citation and quotation marks omitted). Our understanding of these cases leads to the conclusion that, contrary to Appellants' assertion, regardless of possible violations of local, state and federal rules in construction of a residence, the construction is deemed complete and "lawful" for purposes of the statute of repose once a certificate of occupancy is issued by the appropriate authority.

---

> and file a final inspection report that indicates compliance with the Uniform Construction Code."); ***see also Umbelina v. Adams***, 34 A.3d 151, 154 (Pa. Super. 2011) ("Upon completion of the home, [building inspector] issued the home's certificate of occupancy, which was an affirmative statement a builder can rely upon that the property meets all the applicable township codes.").

*Id*. at 213.

Therefore, Appellants' contention alleging that code violations rendered the construction unlawful, and the statute of repose inoperative, fails.

Here, after review of case law pertaining to the proper interpretation of "lawfully" in the statute of repose, the trial court likewise concluded that the meaning of lawful "relates to licensure and not strict compliance with regulations, ordinances or laws…." Trial Court Opinion, 4/14/23, at 8. Ultimately, the trial court reached the following determination:

> Because the certificates of occupancy demonstrate that construction was lawfully performed, Diament is entitled to the protection offered by the [s]tatute of [r]epose. Furthermore, completion of the construction of such improvement, marks the commencement of the repose period at the point when third parties are first exposed to defects in design, planning, or construction. To avoid application of the [s]tatute of [r]epose, [Appellants] were required to commence suit within twelve years of the date of issuance of the certificates of occupancy. [Appellants] commenced suit more than fourteen years after the final two certificates of occupancy were issued. The [s]tatute of [r]epose bars any recovery by [Appellants].

*Id*. at 9 (quotation marks omitted).

Similarly, our review of the record reflects, and it is undisputed, that on March 30, 2006, the West Pikeland Township building inspector issued a certificate of occupancy on the initial construction of the residence. *See* Second Amended Complaint, 8/9/21, at 3 ¶ 9; Answer and New Matter, 11/8/21, at ¶ 58, and Exhibit B. Likewise, the parties agree that two certificates of occupancy were issued on February 20, 2007, regarding work performed on an addition and work performed in finishing the basement of the residence. *See* Second Amended Complaint, 8/9/21, at 4 ¶ 10; Answer

and New Matter, 11/8/21, at ¶ 61, and Exhibit D. Each of the certificates of occupancy contains the following language:

> It appears from an examination of the premises that the building erected or described about conforms with the Building Permit granted and the requirements of the West Pikeland Township Building Code, Zoning Ordinance and other requirements of West Pikeland Township. Permission is hereby granted to occupy said premises.

Answer and New Matter, 11/8/21, Exhibits B and D.

Even if we utilize the commencement date for the statue of repose period with the issuance of the final certificates of occupancy on February 20, 2007, because that date marks the most recent point at which the occupants were exposed to the alleged defects described in Appellants' complaint, the repose period expired twelve years later, on February 20, 2019. It is uncontested that this case commenced on March 5, 2021, with the filing of a writ of summons. Accordingly, the matter was initiated two years and thirteen days beyond the close of the repose period. Consequently, the statute of repose bars Appellants' claims against Diament as a matter of law.

Appellants next argue that the trial court erred in failing to apply the exception to the statute of repose when the court did not accept Appellants' averments that construction was not complete when the occupancy permits were issued. *See* Appellant's Brief, at 30-34. Basically, Appellants claim the certificates of occupancy did not signal the completion of construction because construction was not complete "until months after" the permits were issued. *Id*. at 30. Appellants assert that the determination of the date of completion

of construction, which triggers the start date of the statute of repose, remains an issue of fact.

The statute of repose contains the following pertinent exception to the 12-year repose period:

**(b) Exceptions**.

(1) If an injury or wrongful death shall occur more than ten and within 12 years after completion of the improvement a civil action or proceeding within the scope of subsection (a) may be commenced within the time otherwise limited by this subchapter, but not later than 14 years after completion of construction of such improvement.

42 Pa.C.S.A. § 5536(b)(1).

In support of their claim, Appellants posit that our decision in **Venema** does not present a bright-line rule that the issuance of a certificate of occupancy starts the clock for the statute of repose. **See** Appellant's Brief, at 31. They assert that the issue in Venema "was the limited question of whether the builder's attempts at repairs [for five years after issuance of the occupancy permit] tolled the running of the 12 year repose period." **Id**. at 32 (citation omitted). Appellants aver that "the critical issue in **Venema** is not the [certificate of occupancy] date, but the date on which the occupants became exposed to the defects." **Id**. at 32.

There is no doubt the appellants in **Venema** argued that the statute of repose was tolled by the builder's ongoing repairs after the occupancy permit was issued. **Venema**, 284 A.3d at 210. However, the Court in **Venema** held that for purposes of the statute of repose, the completion of construction is

- 11 -

controlled by the date that an occupancy permit is issued. In rejecting the appellants' attempt to raise a genuine issue of fact as to the completion date of construction, the *Venema* Court noted:

> [E]ven if the affidavit could have been considered, and assuming [the defendant] made the alleged repairs, it would still not raise a question of fact for the reasons outlined above — there is no dispute that a certificate of occupancy was issued in 2003, and as a matter of law, the Statute of Repose period began running from that date because it marked the point at which the occupants were exposed to the alleged defects described in [the appellants'] complaint.

*Venema*, 284 A.3d at 213, n.5 (citation omitted).

In reaching its conclusion, the Court remarked, "[The appellants] cite no cases or statutes (and we find none) supporting their contention that [the defendant's] repairs to the residence delayed the completion of the residence's construction or tolled the Statute of Repose period." *Venema*, 284 A.3d at 213. We observed that "our Supreme Court has held that a Statute of Repose generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control." *Id*. (citations and quotation marks omitted).

The *Venema* Court ultimately made the following ruling:

> We have also held that in this context, "completion of the construction of such improvement," marks the "commencement of the repose period at the point when third parties are first exposed to defects in design, planning, or construction." Accordingly, regardless of any repairs [the defendant] may have done once the residence was legally occupied, the occupants would have been exposed to the alleged defects [at the time of the issuance of the occupancy permit] in 2003, and the Statute of Repose period would have continued to run without interruption from that point on. Accordingly, the trial court did not err in ruling that [the appellants'] claims are time-barred by the Statute of

- 12 -

Repose, and the order granting judgment on the pleadings to [the defendant] must stand.

*Venema*, 284 A.3d at 213-14 (citations and footnote omitted).

The above referenced language from *Venema* negates Appellants' argument that their allegations of unfinished or ongoing construction at the residence circumvented the issuance of a certificate of occupancy as the trigging mechanism that initiated the statute of repose period. Therefore, we conclude that Appellant's issue in this regard lacks merit.

Appellants last argue that the trial court erred in applying the statute of repose covering construction disputes to a claim raised under the UTPCPL, which alleges fraud in the inducement based on statements Diament made concerning the quality of construction. *See* Appellants' Brief, at 34-37. Essentially, Appellants posit that Section 5536 is a construction law statute of repose applicable only to construction defect claims and not to their claim raised under the UTPCPL. *See id*. at 36. Appellants contend the only impact of the construction defects to their UTPCPL claim is to prove that the statements made by Diament to Appellants were false and that Diament knew or should have known of the falsity. However, Appellants ignore the fact that their cause of action stems from their allegations of construction deficiency.

In addressing the application of the statute of repose to Appellant's UTPCPL claim, the trial court offered the following:

[Appellants] maintain they can pursue a UTPCPL claim because the claim is anchored to fraudulent statements made by Mr. Diament in 2016 about the quality of construction. The Statute of

Repose extinguishes all claims for damages "brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property after twelve years. 42 Pa.C.S.[A.] § 5536(a). A statute of repose may bar a cause of action before it accrues. Allegations of fraud will be barred by the Statute of Repose. [Appellants'] UTPCPL claim rests on their allegation of faulty design and construction of the stucco system. [Appellants] allege damages measured by the cost to remediate defects with the stucco system due to Diament's substandard construction. This claim … is extinguished by the Statute of Repose.

Trial Court Opinion, 4/14/23, at 9-10 (citations omitted).

In **Tibbitt v. Eagle Home Inspections, LLC**, 305 A.3d 156 (Pa. Super. 2023), we addressed the applicability of the one-year statute of repose contained in the Home Inspection Law, 68 Pa.C.S.A. § 7512, to a cause of action raising a claim under the UTPCPL. This Court concluded that the statute of repose applied to all causes of action seeking damages on an allegedly faulty inspection report, including common law causes of action and claims under the UTPCPL. **See id**. at 161. In reaching our determination, we observed that "[a]ll of [the appellant's] claims emanate from the inspection report." **Id**. We reiterated that the Home Inspection Law statute of repose "one-year time bar applies to 'an action to recover damages **arising from** a home inspection report.'" **Id**. (quoting 68 Pa.C.S.A. § 7512) (emphasis original).

More recently, in an unpublished decision, this Court applied **Tibbitt** in a case with claims arising from a home inspection report. In **Gidor v. Mangus**, ___ A.3d ___, 2024 WL 80950 (Pa. Super. filed Jan. 8, 2024) (unpublished

memorandum),[3] the plaintiff asserted a claim under the Home Inspection Law, a common law breach of contract claim, and a claim under the UTPCPL. ***See Gidor***, 2024 WL at *1. This Court applied the statute of repose and reasoned that, under ***Tibbitt***, because all the appellant's claims arise out of the inspection report, the action is time barred in its entirety. ***See id***. at *2.

> Here, the applicable statute of repose provides, in pertinent part, that
>
> a civil action or proceeding brought against any person lawfully performing or furnishing the … construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for: (2) Injury to property, real or personal, **arising out of any such deficiency**.

42 Pa.C.S.A. § 5536(a) (emphases added). The instant statute of repose, like the statute of repose in ***Tibbitt*** that pertained to claims arising from home inspection reports, applies to causes of action arising out of construction deficiencies. Again, as in ***Tibbitt***, wherein all the claims emanated from the home inspection report, Appellants' claim in this case under the UTPCPL stemmed from the allegedly defective construction of the residence. Accordingly, the trial court properly concluded that Appellants' UTPCPL claim is time-barred by the statute of repose, and Appellants' contrary claim fails.

Order affirmed.

---

[3] "[U]npublished non-precedential memorandum decision[s] of the Superior Court filed after May 1, 2019 … may be cited for their persuasive value." Pa.R.A.P. 126(b).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/11/2024