J-S05034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| GREGORY WILLIAMS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NANCY J. SHATTUCK REAL ESTATE & | : | No. 877 WDA 2023 |
| ASSOCIATES, LLC, NANCY J. | : | |
| SHATTUCK, INDIVIDUALLY, LAKE | : | |
| ERIE MORTGAGE, AMANDA TUTTLE, | : | |
| KIM LEWIS, PC, KIM LEWIS, | : | |
| INDIVIDUALLY, AND BRAD A. | : | |
| WOODS | : | |

Appeal from the Order Entered July 5, 2023
In the Court of Common Pleas of Warren County Civil Division at No(s):
A.D. 71 of 2018

| | | |
|---|---|---|
| GREGORY WILLIAMS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NANCY J. SHATTUCK REAL ESTATE | : | No. 878 WDA 2023 |
| AND ASSOCIATES, LLC., NANCY J. | : | |
| SHATTUCK, INDIVIDUALLY, LAKE | : | |
| ERIE MORTGAGE, AMANDA TUTTLE, | : | |
| KIM LEWIS, PC, KIM LEWIS, | : | |
| INDIVIDUALLY, AND BRAD A. | : | |
| WOODS | : | |

Appeal from the Order Entered July 5, 2023
In the Court of Common Pleas of Warren County Civil Division at No(s):
A.D. 488 of 2017

BEFORE:  PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: July 16, 2024**

Gregory Williams ("Appellant") appeals from the trial court's July 5, 2023 order granting summary judgment in favor of Nancy J. Shattuck Real Estate and Associates, LLC ("Shattuck Real Estate"), and Nancy J. Shattuck ("Nancy Shattuck"), individually (collectively referred to herein as "Shattuck"), which thereby disposed of all claims and parties in the underlying action.[1] After careful review, we affirm in part, reverse in part, and remand for further proceedings.

**I.**

During the summer of 2015, Appellant contacted Amanda Tuttle, a licensed mortgage loan officer employed by Lake Erie Mortgage in Erie, Pennsylvania, requesting pre-approval for a Federal Housing Administration ("FHA") secured loan, as he sought to buy a house. Trial Court Opinion ("TCO I"), 9/9/22, at 1-2; First Amended Complaint, 6/4/18, at ¶¶ 4-6, 11. After reviewing the financial documentation furnished by Appellant, Ms. Tuttle notified Appellant, by letter dated August 12, 2015, that he had been pre-approved for FHA financing up to $56,900. First Amended Complaint at ¶ 12. Appellant then retained the services of Shattuck Real Estate, through its

---

[1] This Court consolidated *sua sponte* the appeals at Nos. 877 and 878 WDA 2023, as the issues in both matters involve the same parties and are closely related. **See** *Per Curiam* Order, 10/6/23 (single page); Pa.R.A.P. 513 ("Where there is more than one appeal from the same order, … the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal.").

licensed broker Dody Houghwot, to represent his interests in the purchase of a home. *Id.* at ¶ 13; *Id.* at Exhibit B ("Buyer Agency Contract" at 1-3). Agent Houghwot identified a property for sale, owned by Brad A. Woods ("Woods"), located at 8967 Route 6, Mead Township, PA 16371 (the "Property"). *Id.* at ¶ 14. Appellant made a written offer to purchase the Property for the sum of $56,900. *Id.* Woods also retained the services of Shattuck Real Estate, through its broker Makala Wilkins, to represent his interests, and the parties entered into an agreement of sale for the sum of $59,900, with a $3,000 seller assist. *Id.* at ¶ 15; *Id.* at Exhibit C ("Agreement of Sale" at 1-13) (reflecting that the Agreement of Sale was signed by Appellant on August 14, 2015, and by Woods on August 22, 2015).[2]

On August 28, 2015, Appellant formally engaged the services of Lake Erie Mortgage to secure financing for the purchase of the Property. *Id.* at ¶ 16; *Id.* at Exhibit D ("Loan Origination Agreement"). By letter dated September 25, 2015, Lake Erie Mortgage informed Appellant that he had been approved for an FHA loan in the amount of $58,814 by the lender, Plaza Home Mortgage, Inc. *Id.* at ¶ 22; *Id.* at Exhibit E; TCO I at 2.[3] The closing took place on October 16, 2015, at which time the deed for the Property was delivered to Appellant. *Id.* at ¶ 24. Simultaneously, Appellant executed an

---

[2] Appellant alleges that Agent Houghwot's employment with Shattuck Real Estate was terminated sometime after August 22, 2015, and that Nancy Shattuck thereafter undertook the responsibility of representing him as the buyer in this transaction. First Amended Complaint at ¶ 49.

[3] Plaza Home Mortgage, Inc. is not a party to this matter.

FHA-insured mortgage to Plaza Home Mortgage, Inc., pursuant to the Loan Origination Agreement. *Id.* at ¶ 25.

According to Appellant, he took possession of the Property on October 16, 2015. *Id.* at ¶ 29. Around December 12, 2015, the commode in the bathroom became disconnected from the base and he discovered that the bathroom floor was rotted. *Id.* at ¶ 36. On that same date, he also discovered that the crawl space under the house was filled with over three feet of human sewage, as the toilet was not connected to the sanitary sewer line servicing the Property. *Id.* at ¶ 37. *See also id.* at ¶ 20 (averring that Appellant noticed during an inspection of the Property prior to closing "that the wax seal for the toilet was lying on the floor beside the toilet and that the bathroom vanity was not attached to the wall"); *id.* at ¶ 21 (Appellant's claiming that Agent Houghwot had assured him, "those conditions and any other conditions he discovered would be remedied before closing and that he would have an opportunity to do a walk[-]through of the [P]roperty before closing").

On February 13, 2018, Appellant initiated the underlying civil action with the filing of a complaint against Shattuck, Lake Erie Mortgage, Ms. Tuttle, Kim Lewis, PC, Kim Lewis, individually,[4] and Woods.[5] Following the trial court's

---

[4] Kim Lewis, president of Kim Lewis, PC (collectively referred to herein as "Lewis"), is a licensed certified residential real estate appraiser and approved FHA appraiser. First Amended Complaint at ¶¶ 7-9.

[5] The trial court explained that "[t]his matter was originally filed in parallel dockets at A.D. 71 of 2018 [("No. 71")] and A.D. 488 of 2017 [("No. 488")]." TCO I at 3. The trial court ordered these dockets consolidated under No. 488 on March 14, 2018. *Id.*

granting of Shattuck's preliminary objections on the grounds of insufficient specificity, *see* Pa.R.Civ.P. 1028(a)(3), Appellant filed his First Amended Complaint,[6] which set forth four counts against the appellees.

Count I essentially alleged that Shattuck failed to transmit a seller's disclosure statement in accordance with the Real Estate Seller Disclosure Law ("RESDL"), 68 Pa.C.S. §§ 7301-7315, and that Shattuck's representations regarding the knowledge and ability of the appraiser, Kim Lewis, constituted violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1–201-10.  More specifically, Appellant made the following averments regarding Shattuck:

> 28. Prior to taking possession of the [Property], [Appellant] contacted Nancy [] Shattuck for a final walk[-]through and was informed by Nancy [] Shattuck that she did not have time to do a final walk[-]through and no walk[-]through was done prior to closing.
>
> 29. [Appellant] took possession of the [Property] … on October 16, 2015[,] and discovered that neither the toilet nor the vanity had been repaired.
>
> 30. [Appellant] contacted [Shattuck] concerning the defects[,] which had not been discovered prior to possession as no final walk[-]through had been conducted.
>
> 31. Approximately two weeks later[, Appellant] discovered that the metal roof on the home had not been completed.

---

[6] Despite the trial court's March 14, 2018 consolidation order directing all future pleadings to be filed at No. 488, Appellant filed his First Amended Complaint at No. 71, on June 18, 2018.  TCO I at 3.

32.    Again[, Appellant] contacted [Shattuck] about the problem and either Nancy [] Shattuck or [Agent] Wilkins … sent three men to finish the roof project.

33.    On an unnoted date, [Appellant] contacted [Shattuck] after [he] discovered that the floor in front of the front door was spongy.

34.    In response to this call, Nancy [] Shattuck, … on behalf of … Shattuck Real Estate…, sent her husband Jack Shattuck and her son to the … [P]roperty to inspect the spongy floor and[,] as a result of the inspection[,] Nancy [] Shattuck advised [Appellant] that the condition could be easily corrected.

35.    Simultaneously with this inspection, Nancy [] Shattuck notified [Appellant] that he was to make no further calls to her concerning the condition of the [Property].

36.    On or about December 12, 2015, the commode in the bathroom became disconnected from the base and [Appellant] discovered that the bathroom floor was rotted.

37.    On or about December 12, 2015, [Appellant] discovered that the crawl space under the house was filled with over three feet of human sewage[,] as the toilet was not connected to the sanitary sewer line servicing the [P]roperty as part of the Kinzua Warren Joint Sewer Authority.

38.    At that point[, Appellant] discovered that the main sewage drain was disconnected from the sanitary sewer system and sewage had collected under the home to a depth of approximately three feet.

39.    No Seller['s] Disclosure Statement required by the [RESDL] was never [*sic*] given to [Appellant,] despite the fact that defects were discovered during the initial viewing of the house by [Appellant] and … Agent … Houghwot, … which should have been listed on the Seller['s] Disclosure Statement and corrected before closing.  [Appellant] noticed that certain items in the home were not completed[,] such as the commode in the bathroom was not attached to the wax ring which was lying next to the toilet[,] and the vanity in the bathroom was not secured to the wall.

40.    [Agent] Houghwot informed [Appellant] that all items including the connection of the toilet would be completed and that the FHA Appraiser would visit the home to perform an inspection

to ensure that the home met the minimum standards for an FHA mortgage[,] which would include correction of any items.

41.  [Appellant] relied on the representations made by [Agent] Houghwot, … who was an agent employed by [Shattuck Real Estate].

First Amended Complaint at ¶¶ 28-41.

Based on the foregoing, Appellant asserted that Shattuck failed to comply with the mandates of the RESDL.  *Id.* at ¶ 54.  *See also id.* at ¶ 65 (stating that Nancy Shattuck became a "dual agent" upon the termination of Agent Houghwot, representing both Appellant and Woods in their real estate transaction); *id.* at ¶ 43 (averring that Section 7313 of the RESDL requires the seller's agent to "advise the seller of his responsibility and provide the buyer with a copy [of the] Seller['s] Property Disclosure Statement").  Consequently, Appellant argued that he was entitled to actual damages.  *Id.* at ¶ 55; *id.* at ¶ 65 (citing, *inter alia*, 68 Pa.C.S. § 7311).

Moreover, Appellant claimed that Shattuck's representations regarding Ms. Lewis's knowledge and ability to provide an appraisal meeting the FHA's minimum property requirements were "fraudulent and deceptive" and induced him to proceed with the purchase of the Property, "which was in a defective condition…."  *Id.* at ¶¶ 51-53.  *See also id.* at ¶ 51 (stating that Shattuck "knew or should have known" that Appellant would rely upon their representations regarding Ms. Lewis); *id.* at ¶ 57 (alleging that the appraisal secured by Shattuck did not meet the minimum FHA standards "as set forth in the FHA Handbook, 4000.1, FHA Single Family Housing"); *id.* at ¶ 61 (indicating that Lewis was retained by Shattuck to conduct the FHA appraisal

required by Lake Erie Mortgage). Appellant contended that such deceptive conduct constituted a violation of the UTPCPL for which he was entitled to recover up to three times the actual damages. *Id.* at ¶¶ 50, 52 (citing 73 P.S. §§ 201-2(4)(xxi), 201-9.2(a)); *id.* at ¶ 70 (averring that Shattuck engaged in fraudulent and deceptive practices, "which created confusion and misunderstanding by [Appellant] with respect to the appraisal and the condition of the [Property] to his great detriment").

Additionally, Appellant averred that Shattuck owed him a duty as his agent, "to exercise professional skill and care to deal honestly and in good faith[] to provide advice to [Appellant] as [the] buyer[,]" pursuant to Sections 455.606 and 455.606(a)-(d) of the Real Estate Licensing and Registration Act ("RELRA"), 63 P.S. §§ 455.101-455.902. *Id.* at ¶ 66.[7] Appellant claimed, however, that Shattuck "failed to comply with these provisions which caused [him] damages." *Id. See also id.* at ¶¶ 67-68 (alleging that despite Appellant's request for a final walk-through of the Property prior to closing, Nancy Shattuck indicated that she was "too busy[,]" and that no final inspection was conducted). "Wherefore, [Appellant] demand[ed] judgment against [Shattuck] in an amount equal to the actual damages incurred of $32,196.24 plus punitive damages and counsel fees pursuant to the [UTPCPL]." *Id.* at ¶ 73 (cleaned up).

---

[7] The RELRA sets forth the statutory licensing requirements for real estate brokers in Pennsylvania and "was enacted to protect the public from fraud by those engaged in the business of trading real estate." *Ladd v. Real Estate Commission*, 220 A.3d 1096, 1098, 1110 (Pa. 2020) (citation omitted).

In Count II, Appellant claimed that Lake Erie Mortgage and Ms. Tuttle were in breach of a contract and had engaged in "fraudulent or deceptive practices" in violation of the UTPCPL, based on the following averments:

75. [Ms.] Tuttle at all times relevant hereto represented herself to [Appellant] as a loan officer with Lake Erie Mortgage who[,] as a home mortgage consultant[,] had originated a wide range of mortgage programs and was very knowledgeable in conventional, FHA, and VA financing, all of which appeared on the web page containing [Ms.] Tuttle's professional profile. A copy of said web page is attached hereto and made a part hereof as Exhibit K.

…

79. [Appellant] executed a mortgage broker fee agreement with Lake Erie Mortgage on August 28, 2015[,] which was also executed by [Ms.] Tuttle on the same date wherein [Appellant] agreed to a mortgage broker fee. A copy of the fee agreement is attached hereto and make [*sic*] a part hereof as Exhibit L.

80. [Appellant] also executed a mortgage loan origination agreement on August 28, 2015[,] naming Lake Erie Mortgage the mortgage loan originator, a copy of which is attached hereto and made a part hereof as Exhibit M.[8]

81. Throughout the entire process, [Appellant] was at various times in communication with [Ms.] Tuttle[,] who requested various documents including wage statements, verification of [Appellant's] 401(b), and other documents necessary for [her] to secure mortgage financing for [Appellant]….

82. [Appellant] relied upon the representations on [Ms.] Tuttle's web page and the web page of Lake Erie Mortgage stating that they were familiar with the requirements of an FHA[-]insured mortgage and that the applications were processed by [Ms.] Tuttle and Lake Erie Mortgage.

---

[8] Based on our review of the record, Exhibit M appears to be a duplicate of Exhibit D, which we refer to herein as the Loan Origination Agreement.

83. As hereinabove set forth, [Appellant] was approved for a mortgage of up to $56,000 through Lake Erie Mortgage and [Ms.] Tuttle to purchase a home.

84. Ultimately, after [Appellant] had executed [the Agreement of Sale], [Ms.] Tuttle, … as agent for Lake Erie Mortgage[,] secured a lender for [Appellant], Plaza Home Mortgage, Inc.

85. [Ms.] Tuttle represented to [Appellant] that she would supply an approved appraisal for an FHA[-]insured mortgage which would include meeting the minimum standard property requirements[, and] which [Ms.] Tuttle advised that she was familiar with and had experience in in her capacity as an agent for Lake Erie Mortgage.

86. An itemization of the amount financed is attached hereto and made a part hereof as Exhibit N, which indicates that Lake Erie Mortgage received an origination fee for securing the mortgage with Plaza Home Mortgage in the amount of $1,617.39.

87. [Ms.] Tuttle was to send an appraiser to appraise the Property….

88. [Ms.] Tuttle informed [Appellant] that … [Shattuck] did not like the appraiser furnished by [Ms.] Tuttle and would supply [their] own.

89. [Ms.] Tuttle represented to [Appellant] that the appraiser would still issue an FHA appraisal indicating that the standards for an FHA[-]insured mortgage[,] setting forth both minimum property requirements and minimum property standards[,] had been met.

90. The appraisal was performed by [Lewis].

91. The appraisal was delivered to [Ms.] Tuttle[,] who knew or should have known that based on her representations to [Appellant] on which [Appellant] relied to his detriment, that the appraisal would meet the standards required by FHA for an FHA[-]insured loan.

92. As a result of the reliance on the representations made by [Ms.] Tuttle[,] … her failure to ensure that the appraisal would meet the requirements of an FHA loan constituted misrepresentation of material facts subject to the [UTPCPL]. [Appellant] justifiably relied on the expertise and the misrepresentation of material facts made by [Ms.] Tuttle[,] in

particular[, the] statement that the … appraisal performed by … Lewis would be in compliance with FHA requirements.

93.     [Appellant] avers that the appraisal did not meet FHA standards as set forth in the [FHA Single Family Housing] Handbook 4000.1…, and as a result thereof[, Appellant] suffered harm based upon that reliance which entitles him to an award of punitive damages and counsel fees from [Ms.] Tuttle pursuant to the UTPCPL.

94.     [Ms.] Tuttle violated the contract executed by [Appellant] for which [Ms.] Tuttle's employer received a fee, the receipt of which fee is a violation of the [UTPCPL,] entitling [Appellant] to actual damages of $32,196.24 plus punitive damages and attorney[s'] fees….

95.     The representations made with respect to the knowledge and experience of [Ms.] Tuttle in securing an FHA[-]insured mortgage and the representations that the appraisal which she received from … Lewis meets the FHA required standards constitute unfair and deceptive practices that amounts to engaging in fraudulent or deceptive conduct which created a likelihood of confusion and misunderstanding on the part of [Appellant] in violation of 73 P.S. §[]201-2(4)(xxi).

96.     [Appellant,] as a first[-]time buyer[,] relied upon the representations as hereinabove set forth and also upon the internet posting (Exhibit K) by [Ms.] Tuttle[,] representing herself as a loan officer at Lake Erie Mortgage[,] and her statement as to her own ability and experience as well as that of Lake Erie Mortgage.

97.     Based upon these representations, [Appellant] in reliance then executed a mortgage broker fee agreement, mortgage loan origination agreement and itemization of amounts financed as set forth in Exhibits L, M, and N, supplied to him by [Ms.] Tuttle and Lake Erie Mortgage.

98.     [Appellant] avers that … the appraisal performed by … Lewis and supplied to [Ms.] Tuttle and Lake Erie Mortgage … is defective and fails to meet the requirements of an FHA[-]insured mortgage[,] as it does not indicate an examination of the crawl space as the home does not have a basement, [and it] fail[s] to disclose a bow in the foundation and the lack of a cover on the electric box, all of which would have been obvious to anyone with

alleged expertise in FHA[insured mortgages[,] as was claimed by [Ms.] Tuttle as agent for Lake Erie Mortgage.

*Id.* at ¶¶ 75-99. Wherefore, Appellant demanded judgment "in the amount of $32,196.24 plus treble damages and attorney[s'] fees." *Id.* at ¶ 99.

In Count III, Appellant alleged that Lewis failed to ensure that the Property met the minimum requirements for an FHA-approved mortgage, in violation of the UTPCPL, specifically averring the following:

101. … Kim Lewis is an FHA[-]approved appraiser as so listed in the FHA roster of appraisers published as part of the U.S. Department of Housing and Urban Development Handbook 4000.1 Single Family Housing Policy Handbook.

102. As part of the requirements for an FHA[-]insured mortgage appraisal, the appraiser is required to observe and analyze, and report that the property meets [the Department of Housing and Urban Development's ("HUD")] minimum property requirements and minimum property standards.

…

104. The minimum property standards and the minimum property requirements provide that the appraiser inspect the foundation, heating, electrical, and plumbing systems in the home to ensure they can be used safely by the buyer.

105. Where the property has a crawl space accessed by a scuttle[,] as [Appellant's P]roperty has, the appraiser must enter the crawl space at least to his/her neck and shoulders and inspect the structure and systems including plumbing therein.

106. [Appellant] avers that … Kim Lewis did not do such an inspection of the crawl space[,] as if she [had,] she would have observed the accumulation of human sewage and wet insulation therein.

107. In addition[,] the appraisal photographs disclose that the electric service box is without a cover plate.

- 12 -

108. An inspection would have disclosed the metal roof was not completed, the floors in the kitchen and living room were spongy, and that the commode was not secure.

109. Section B of said Handbook 4000.1 requires the appraiser [to] notify the mortgagee of any deficiencies when the property doesn't comply with FHA minimum property requirements[,] which … Lewis failed to do and which failure was an act of misrepresentation imposing liability under the UTPCPL….

110. [Appellant] avers that as an FHA[-]approved appraiser, … Lewis … knew or should have known what was required of an FHA appraisal and[,] in fact[,] issued an appraisal for Plaza Home Mortgage which [Lewis] knew or should have known was an FHA lender, when said appraisal did not comply with the requirements of an FHA[-]insured mortgage.[9]

111. In addition thereto, … Lewis … knew or should have known the appraisal was necessary for [Appellant] to comply with the requirements of an FHA[-]insured mortgage and that [Appellant] was a third party beneficiary of the contract that existed between … Shattuck and … Lewis to provide an FHA[-]approved mortgage appraisal for [Appellant,] as required by Lake Erie Mortgage as mortgage broker for [Appellant].

112. As the agent or employee for … Shattuck, … Lewis … was to perform the requisite FHA[-]insured mortgage appraisal[.] … Lewis knew or should have known that her failure to perform an appraisal meeting the requirements of an FHA[-]approved mortgage[,] which included ensuring that the [P]roperty met the minimum property requirements and minimum property standards[,] which … Lewis … held herself out as being able to perform[,] would be relied upon by [Appellant] and would induce him to close the real estate transaction based upon his reasonable belief that the appraisal would meet the standards as aforesaid.

113. As set forth hereinabove, the [UTPCPL], which is applicable to the purchase of real estate, imposed liability for unfair and deceptive practices, engaging in conduct in any fraudulent or deceptive practice which creates a likelihood of confusion and misrepresentation. [*See*] 73 P.S. §[]201-2(4)(xxi). … Lewis … knew or should have known that in performing an appraisal for an

---

9 A copy of Lewis's appraisal is attached to Appellant's First Amended Complaint and marked as Exhibit I ("Appraisal").

FHA[-]insured mortgage[,] the appraisal was required to meet the minimum property requirements and minimum property standards and that [Appellant] would rely on and did rely on the representations made by the appraiser hired by … Shattuck[,] and the representations made by … Tuttle [that] the appraisal would comply with FHA minimum property standards and would be relied upon by [Appellant,] who did rely on said representations much to his detriment for which he incurred damages to remedy the conditions not disclosed by … Lewis…, [due to her] failure to discover the existence of raw sewage under his home which should have been discovered by the inspection required to meet the FHA minimum property requirements and minimum property standards as well as the defect in the foundation.

114. As a result of the failure of … Lewis…, [Appellant] was forced to expend the sum of $800.00 to remove the accumulated sewage from the crawl space beneath the house.

115. In addition thereto, moisture necessitated the removal of all the insulation from the home which was causing the mold to grow[,] which [Appellant] believes is black mold[, and] as a result of which [Appellant] has incurred or will incur expenses in the amount of $31,396.24, all of which could have been avoided if … Lewis … had performed an appraisal which met the standards for an FHA[-]insured mortgage as set forth in the FHA Handbook 4000.1.

*Id.* at ¶¶ 101-15. Wherefore, Appellant demanded judgment against Lewis "in the amount of $32,196.24[,] plus an award of double damages under the UTPCPL…." *Id.* at ¶ 115.

Finally, Count IV averred that Woods violated the UTPCPL by failing to deliver a Seller's Disclosure Statement as required under the RESDL. Specifically, he stated:

119. [Appellant] has … discovered that due to the accumulation of liquid sewage under the home, the home has developed what appears to be black mold.

120. As a result of the failure of … Woods to provide the Seller['s] Disclosure Statement and pursuant to the provisions thereof, [Appellant] has incurred expenses in an attempt to remediate the

- 14 -

situation and to remove the raw sewage from the crawl space beneath the house.

<div style="margin-left:2em">

Alan Oswald            $250.00

Waste Treatment Corp.     $550.00

</div>

121. In addition, [Appellant] has secured an estimate to repair the damage to his home caused by the defective conditions in the home[,] including replacing the living[]room floor, replacing the bathroom floor, replacing a section of the kitchen floor, replacing the drywall, [and] replacing the roof, as set forth in Exhibit H attached hereto for a total of $31,396.24.

122. [Appellant] avers that … Woods failed to provide a Seller['s] Disclosure Statement as required[,] which constitutes a violation of the [UTPCPL,] which entitles [Appellant] to bring a cause of action pursuant to 73 P.S. §[]201-9.2(a) and 73 P.S. §[]204-9[,] which may entitle [Appellant] to treble damages pursuant to the section and an award of reasonable attorney[s'] fees.

*Id.* at ¶¶ 119-22. *See also id.* at ¶¶ 114-18 (citing 68 Pa.C.S. §§ 7303, 7305, 7311). Wherefore, Appellant demanded judgment against Woods "in the amount of $96,588.72[,] plus reasonable attorney[s'] fees." *Id.* at ¶ 122.

On June 18, 2018, Lewis filed preliminary objections to the First Amended Complaint, asserting a failure to state a claim as a matter of law pursuant to Pa.R.Civ.P. 1028(a)(4). Essentially, Lewis argued that

the First Amended Complaint … is fatally deficient in that it fails to plead facts with specificity as to an alleged duty on the part of [Lewis], a failure to perform an appraisal (as opposed to an inspection[]— which [Appellant] himself waived), [or] that the alleged defective conditions were something that could have been identified at the time of the appraisal and were in such condition that caused the alleged damages.

Lewis's Preliminary Objections, 6/18/18, at ¶ 32.[10]  *See also id.* at ¶ 27 (noting that the Appraisal "specifically identifies that the foundation of the [P]roperty has a crawl space and that [she] checked the box indicating that she identified and inspected this space, with no physical defects found") (citing Appraisal at 1); *id.* at ¶ 29 (stating that Appellant fails to aver that, "**at the time of** … **Lewis's inspection** of the crawl space — when the house was vacant and uninhabited[ —] that it had three feet of sewage in it") (emphasis added).

Similarly, on June 25, 2018, Lake Erie Mortgage and Ms. Tuttle jointly filed preliminary objections, claiming insufficient specificity and failure to state a claim against them as a matter of law.  *See* Pa.R.Civ.P. 1028(a)(3), (4). They argued that Appellant failed to identify which FHA standards the appraisal violated, which contract Lake Erie Mortgage and Ms. Tuttle violated, and which provisions of said contract were allegedly breached.  Lake Erie Mortgage and Tuttle's Preliminary Objections, 6/25/18, at ¶¶ 32-33. Moreover, they asserted that Appellant failed "to articulate how the alleged 'representations' by [Ms.] Tuttle caused his damages and … [failed] to plead

_____

[10] Lewis proffered that Appellant fails to appreciate the limitations of an appraisal, as opposed to an inspection.  Lewis's Preliminary Objections at ¶ 31.  Lewis elaborated: "An appraisal is different from a home inspection and does not replace a home inspection.  Appraisals estimate the value of property for lenders.  An appraisal is required to ensure the property is marketable. Home inspections evaluate the condition of the home for buyers."  *Id.* (quoting U.S. Department of Housing and Urban Development Federal Housing Administration HUD-92564-CN (6/14)).

any facts to support the existence of a duty that [Lake Erie Mortgage and Ms. Tuttle] had to inspect the Property and/or to verify the appraisal." *Id.* at ¶ 34.[11] They advanced that, "[w]ithout any factual predicate that [Lake Erie Mortgage and Ms. Tuttle] were aware of the actual condition of the Property, became aware of the contents of the appraisal[,] and had a duty to verify the appraisal[, Appellant] cannot succeed on his claims against [them]." *Id.* at ¶ 35.

On October 9, 2018, the trial court issued an opinion and order sustaining the foregoing preliminary objections filed by Lewis, Lake Erie Mortgage, and Ms. Tuttle, and dismissing Counts II and III of the First Amended Complaint with prejudice. *See* Trial Court Opinion and Order ("TCOO I"), 10/9/18, at 7.[12]

On October 15, 2021, Woods filed a motion seeking summary judgment in his favor as to Appellant's sole claim against him — that Woods failed to deliver a Seller's Disclosure Statement to Appellant in compliance with the RESDL. *See* Woods' Motion for Summary Judgment, 10/15/21, at 1-5. Contrarily, Woods argued that he completed and signed a Seller's Disclosure

_____

[11] Lake Erie Mortgage and Ms. Tuttle noted that, pursuant to the Agreement of Sale, Appellant failed to elect and/or waived his right to have the Property inspected, "including the roof, interior and exterior plumbing, and public sewer systems, and for mold and other items." Lake Erie Mortgage and Tuttle's Preliminary Objections at ¶ 6 (citing Agreement of Sale at ¶ 12).

[12] We observe that the preliminary objections were filed at No. 488 only, whereas the order sustaining the preliminary objections was entered at both Nos. 488 and 71.

Statement and then gave it to Shattuck. *See id.* at ¶ 4 (indicating that a copy of the form he completed is attached to Woods' Answer to the First Amended Complaint, 9/14/18, at Exhibit 1). Additionally, he noted that the record also contains a copy of the Seller's Disclosure Statement bearing Appellant's signature and initials. *Id.* at ¶¶ 5, 12 (citing Shattuck's Answer to the First Amended Complaint, 6/25/18, at Exhibit A).

Appellant did not file a written response to Woods' motion. At oral argument on the matter, however, counsel for Appellant argued that Appellant "did not receive" the Seller's Disclosure Statement. N.T. Hearing, 3/16/22, at 7; *id.* at 8 ("[H]e never saw it."). The trial court subsequently granted summary judgment in favor of Woods, resolving Count IV of the First Amended Complaint. *See* Trial Court Opinion and Order ("TCOO II"), 3/21/22, at 5 ("[Appellant] failed to raise a genuine issue of material fact against [Woods], and therefore [Woods'] Motion for Summary Judgment is granted."); *id.* at 3 (concluding that Woods satisfied his obligation under the RESDL by delivering the Seller's Disclosure Statement to Shattuck, the employer of Appellant's agent, and that Appellant "clearly received" the document based on the evidence of record).[13]

On April 11, 2022, Shattuck — the only remaining defendants/appellees in this matter — moved for summary judgment regarding the surviving causes

---

[13] The order granting Woods' motion for summary judgment was entered at No. 71.

of action against them (Count I). First, Shattuck argued that they satisfied their obligation under the RESDL by transmitting Woods' completed Disclosure Statement to Appellant on August 14, 2015. Shattuck's Motion for Summary Judgment, 4/11/22, at ¶¶ 54-57. As evidence of Appellant's receipt of the document, they attached a copy of the Seller's Disclosure Statement appearing to be signed by Appellant on that same date. *See id.* at Exhibit B (reflecting Appellant's signature dated August 14, 2015). They further noted that, in ruling on Woods' Motion for Summary Judgment, the trial court concluded that there was no genuine issue of material fact regarding delivery of the Seller's Disclosure Statement, as the record contained evidence of Appellant's receipt of said document. *Id.* at ¶ 59 ("[Appellant] clearly received the Seller['s] Disclosure Statement because the record indicates that [Appellant] signed the statement months before closing." (quoting TCOO II at 3) (cleaned up)).

Additionally, Shattuck maintained that they could not be held liable under the UTPCPL. *Id.* at ¶¶ 61-65 (citing, *inter alia*, 73 P.S. § 201-2(4)(xxi)). First, they denied having ever referred Appellant to Ms. Lewis to perform the appraisal. *Id.* at ¶ 66. Nevertheless, even if they had recommended Ms. Lewis to Appellant, they argued that "[Ms.] Lewis was an FHA[-]authorized appraiser[; thus,] it was reasonable for the parties to have expected a proper appraisal." *Id.* at ¶ 70. *See also id.* at ¶ 66 (declaring that "negligent referral" is not a recognized cause of action in Pennsylvania). Moreover, Shattuck argued that Appellant failed to establish a claim of "negligent

misrepresentation" against them.  *Id.* at ¶ 71 (acknowledging that "negligent misrepresentation" is a valid cause of action in Pennsylvania).

Finally, Shattuck denied Appellant's allegation that he was not provided with a final walk-through of the Property before closing.  *Id.* at ¶ 37. Regardless, Shattuck asserted that Appellant bought the Property "as is" after waiving his right to a home inspection. *Id.* at ¶ 39.  Therefore, they concluded that Appellant had failed to establish a cause of action against them.  *Id.*  By order of court dated July 14, 2022, the trial court granted Shattuck's motion for summary judgment and dismissed all claims against Shattuck with prejudice.  **See** Trial Court Opinion and Order ("TCOO III"), 7/14/22, at 8.[14]

On August 10, 2022, Appellant filed a timely notice of appeal — at No. 71 only — from the trial court's July 14, 2022 order.  **See Williams v. Shattuck**, 2023 WL 3452295 (Pa. Super. filed May 15, 2023) (unpublished memorandum).  In addition to his assertion that the trial court erred in granting summary judgment in favor of Shattuck, Appellant also claimed that the trial court erred in granting summary judgment in favor of Woods and in sustaining the preliminary objections filed by Lake Erie Mortgage, Ms. Tuttle, and Lewis.  *Id.* at *2.  Due to various breakdowns in the trial court's operations, however, we were unable to address the merits of the issues raised by Appellant on appeal.  **See id.** (noting that the parties' haphazardly

---

[14] The order granting summary judgment in favor of Shattuck was entered at No. 71.

filing pleadings at either docket and the trial court's failure to enforce its consolidation at No. 488 led to both records being "muddled and incomplete").

Consequently, we vacated the trial court's July 14, 2022 order entered at No. 71, and remanded the case with instructions for the Clerk of Courts "to ensure that **all** filings made by the parties after the trial court's March 14, 2018 consolidation order are entered at each docket and included in each record." *Id.* at *3 (emphasis in original). Additionally, we directed the trial court to enter an order granting summary judgment in favor of Shattuck at **both** docket Nos. 488 and 71, and for Appellant to then file a separate notice of appeal at each docket number. *Id.* We explained:

> In each notice of appeal, Appellant shall state that he is appealing from the new order granting summary judgment in favor of Shattuck, the March 21, 2022 order granting summary judgment in favor of Woods, and the October 9, 2018 order sustaining the preliminary objections of Lewis, Lake Erie Mortgage, and Tuttle. *See K.H. v. J.R.*, 826 A.2d 863, 871 n.10 (Pa. 2003) (noting that "a reference in the notice of appeal to any prior orders that have become appealable by virtue of the disposition of the remaining claims and parties may also serve to eliminate any confusion surrounding the object of an appeal").

*Id.*

Accordingly, on July 5, 2023, the trial court issued a new order granting summary judgment in favor of Shattuck and dismissing all claims against Shattuck with prejudice. Order, 7/5/23 (single page). *See also* Trial Court Opinion ("TCO II"), 9/28/23, at 1 (purporting to have complied with this Court's remand instructions and to have "re-opened the previously

consolidated docket[s]").[15]  Notice of the entry of the July 5, 2023 order was given to all parties on July 6, 2023, in accordance with Pa.R.Civ.P. 236.

On August 1, 2023, Appellant filed separate notices of appeal at Nos. 488 and 71, purporting to appeal from the July 14, 2022 order, which was vacated by this Court on May 15, 2023.  **See Shattuck**, 2023 WL 3452295 at *3.  The trial court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, to which he timely complied.  **See** Rule 1925(b) Concise Statement, 8/30/23, at 1-2 (averring that the trial court erred in granting summary judgment in favor of Shattuck and Woods, and in sustaining the preliminary objections of Lake Erie Mortgage, Ms. Tuttle, and Lewis).  Based on the foregoing, we believe that Appellant meant to appeal from the new order granting summary judgment in favor of Shattuck, which thereby disposed of all claims and parties in the underlying action.  Thus, we presume this to be an appeal from the July 5, 2023 order, and we have adjusted the caption accordingly.  **See Johnston the Florist v. TEDCO Const. Corp.**, 657 A.2d 511, 514-15 (Pa. Super. 1995) (regarding "as done that which ought to have been done" in the interest of judicial economy).

Herein, Appellant presents the following issues for our review:

1. Did the trial court err in granting preliminary objections with prejudice in favor of … Lake Erie Mortgage and [Ms.] Tuttle by

---

[15] Based on our review of the certified record, it appears that the Clerk of Courts has updated the dockets at Nos. 488 and 71 and that both dockets now reflect all filings made after the March 14, 2018 consolidation order.

finding that [Ms.] Tuttle and Lake Erie Mortgage had no duty to [Appellant] under the written contract between them?

2. Did the trial court err in granting preliminary objections with prejudice in favor of Lewis on the basis that Lewis had no duty to [Appellant,] despite the fact that a proper appraisal meeting FHA minimal [*sic*] standards would have led to the denial of a mortgage[,] which was dependant [*sic*] upon a proper appraisal[,] and by finding that [Appellant's] waiver of the inspection clause in the contract for the purchase of the home exonerated Lewis of any liability?

3. Did the trial court err in granting summary judgment in favor of … Woods in violation of the provisions of Pa.R.C[iv].P. 1035.3(a) governing the credibility of the testimony of Woods under the ***Nanty-Glo***[16] decision[,] which raises the issue of material fact for the actions dependant [*sic*] upon the credibility and demeanor of the witnesses who will testify at trial?

4. Did the trial court err in granting summary judgment in favor of … Shattuck … in relying on a decision with respect to summary judg[ment] in favor of … Woods and based upon the denials of allegations in the amended complaint filed by [Appellant,] which denials depend upon the determination of credibility at trial under ***Nanty-Glo***[,] and by denying [Appellant's] request to supplement the record based on the deposition of Shattuck as provided by Pa.R.C[iv].P. 1035.3(2)(c) to depose Shattuck and … [A]gent Wilkins[,] which depositions had been thwarted by Shattuck?

Appellant's Brief at 5-6 (cleaned up).

## II.

Before we address the merits of Appellant's claims, we consider whether these issues are properly before us, as "[t]he appealability of an order goes directly to the jurisdiction of the Court asked to review the order." ***Stahl v.***

---

[16] ***Borough of Nanty-Glo v. American Surety Co. of New York***, 163 A. 523 (Pa. 1932).

*Redcay*, 897 A.2d 478, 485 (Pa. Super. 2006) (internal brackets and citation omitted).

> Pennsylvania law makes clear that an appeal may be taken from a final order or an order certified as a final order [(Pa.R.A.P. 341)]; an interlocutory order as of right [(Pa.R.A.P. 311)]; an interlocutory order by permission [(Pa.R.A.P. 312, 1311; 42 Pa.C.S. § 702(b))]; or a collateral order [(Pa.R.A.P. 313)]. A final order is one that disposes of all the parties and all the claims in a case, is expressly defined as a final order by statute, or is entered as a final order pursuant to the trial court's determination. *In re N.B.*, 817 A.2d 530, 533 (Pa. Super. 2003) (citing Pa.R.A.P. 341(b)(1)-(3)).

*Takosky v. Henning*, 906 A.2d 1255, 1258 (Pa. Super. 2006) (footnotes omitted).

Instantly, Appellant's claims relate to the trial court's October 9, 2018 order sustaining preliminary objections, its March 21, 2022 order granting summary judgment in favor of Woods, and its July 5, 2023 order granting summary judgment in favor of Shattuck. At the time of their entry, both the October 9, 2018 and March 21, 2022 orders were interlocutory orders not ripe for appeal. However, those orders became reviewable upon the entry of the July 5, 2023 order, which disposed of all remaining parties and claims in this matter. *See Quinn v. Bupp*, 955 A.2d 1014, 1020 (Pa. Super. 2008) ("Interlocutory orders that are not subject to immediate appeal as of right … become reviewable on appeal upon the trial court's entry of a final order.") (brackets and citations omitted). *See also Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 650 (Pa. Super. 2002) ("A trial court order declaring a case settled as to all remaining parties renders prior grants of

summary judgment final for Rule 341 purposes, even if the prior orders entered disposed of fewer than all claims against all parties.") (citation omitted).

Moreover, our Supreme Court has declared that "where each of the defendants in a single action is dismissed prior to trial, an appeal from the order dismissing the remaining claim or party is sufficient to bring for review the earlier issued orders." ***K.H.***, 826 A.2d at 871. ***See also id.*** (adding that "[a]ny concern as to the intended scope of the appeal may be addressed through the filing of a statement of matters complained of on appeal pursuant to Appellate Procedural Rule 1925(b)"); ***Baker v. Cambridge Chase, Inc.***, 725 A.2d 757, 762-63 (Pa. Super. 1999) (involving a single action with multiple defendants who were dismissed in a piecemeal fashion; concluding that a notice of appeal from a final order which made no reference to prior interlocutory orders sustaining preliminary objections and granting summary judgment in favor of other defendants encompassed the prior orders). Hence, we deem the notices of appeal from the final order entered on July 5, 2023, to be sufficient to include the prior interlocutory orders in our scope of review — especially where Appellant filed a Rule 1925(b) statement indicating his intention to challenge the October 9, 2018 and March 21, 2022 orders on appeal.

Having determined that Appellant's issues are properly before us, we proceed with addressing the merits of his claims. We begin by noting that

resolution of these claims implicates the following statutes and legal principles:

<div align="center">UTPCPL</div>

We have previously explained:

The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…." 73 P.S. § 201-3.[3] The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. *Agliori v. Metropolitan Life Ins. Co.*, 879 A.2d 315, 318 (Pa. Super. 2005). Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection. *Com., by Creamer v. Monumental Properties, Inc.*, … 329 A.2d 812, 816 ([Pa.] 1974).

> [3] The protections provided by the UTPCPL also apply to residential real estate transactions. *Growall v. Maietta*, 931 A.2d 667, 676 (Pa. Super. 2007), *appeal denied*, … 951 A.2d 1164 ([Pa.] 2008).

The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" as a result of an unlawful method, act or practice. 73 P.S. § 2-9.2(a). Upon a finding of liability, the court has the discretion to award "up to three times the actual damages sustained" and provide any additional relief the court deems proper. *Id.* Section 201-2(4) lists twenty enumerated practices which constitute actionable "unfair methods of competition" or "unfair or deceptive acts or practices." 73 P.S. § 201-2(4)(i)-(xx). The UTPCPL also contains a catchall provision at 73 P.S. § 201-2(4)(xxi). The pre-1996 catchall provision prohibited "fraudulent conduct" that created a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(xvii).[4] In 1996, the General Assembly amended the UTPCPL and revised Section 201-2(4)(xxi) to add "deceptive conduct" as a prohibited practice. *See* Act of Dec. 4, 1996, P.L. 906, No. 146, § 1 (effective Feb. 2, 1997). The current catchall provision proscribes "fraudulent **or deceptive conduct** which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi) (emphasis added).

4 Prior to 1996, the catchall provision was codified at 73 P.S. § 201-2(4)(xvii). It was recodified at 73 P.S. § 201-2(4)(xxi).

***Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC***, 40 A.3d 145, 151-52 (Pa. Super. 2012) (emphasis added).

RESDL

The RESDL, which became effective on December 20, 2001, applies "to all residential real estate transfers" except for certain types of transfers, none of which are applicable in the case *sub judice*. ***See*** 68 Pa.C.S. § 7302. It requires a seller of real property to disclose to a buyer, prior to the signing of an agreement of sale or transfer, "any material defects[17] with the property known to the seller[,] by completing all applicable items in a property disclosure statement which satisfies the requirements of section 7304 (relating to disclosure form)." 68 Pa.C.S. § 7303.

Generally, a seller "should only be required to reveal material defects with the actual physical structure of the house, with legal impairments on the property, and with hazardous materials located there." ***Milliken v. Jacono***,

---

17 The term "material defect" is defined as:

A problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system[,] or subsystem is near, at[,] or beyond the end of the normal useful life of such a structural element, system[,] or subsystem is not by itself a material defect.

68 Pa.C.S. § 7102.

60 A.3d 133, 140 (Pa. Super. 2012) (*en banc*). Section 7308 of the RESDL imposes an affirmative duty on the seller, in completing the property disclosure statement, to "not make any representations that the seller or the agent for the seller knows or has reason to know are false, deceptive or misleading" and to "not fail to disclose a known material defect." 68 Pa.C.S. § 7308. "The seller is not obligated … to make any specific investigation or inquiry in an effort to complete the property disclosure form." *Id.* "If at the time the disclosures are required to be made, an item of information required to be disclosed is unknown or not available to the seller, the seller may make a disclosure based on the best information available to the seller." 68 Pa.C.S. § 7306.

A. *Issues 1 & 2*

Appellant's first two issues contest the trial court's sustaining of preliminary objections to his First Amended Complaint. We review these claims mindful of the following:

> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached hereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.
>
> As a trial court's decision to grant or deny a demurrer involves a matter of law, our standard for reviewing that decision is plenary.

Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recover based on the facts alleged in the complaint. Moreover, when considering a motion for a demurrer, the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.

**Donaldson v. Davidson Bros., Inc.**, 144 A.3d 93, 100 (Pa. Super. 2016) (internal quotation marks and citations omitted). Likewise, "[a]ccepting all material averments as true, we must determine whether the complaint adequately states a claim for relief under any theory of law." **Id.** (citation omitted). However, "[w]hen reviewing a grant of a demurrer, we are bound neither by the inferences drawn by the trial court, nor by its conclusions of law." **Id.** (citation omitted).

Moreover, "Pennsylvania is a fact-pleading state; a complaint must not only give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests, but the complaint must also formulate the issues by summarizing those facts essential to support the claim." **Lerner v. Lerner**, 954 A.2d 1229, 1235 (Pa. Super. 2008) (citation omitted). Pennsylvania Rule of Civil Procedure 1019 governs the content of pleadings and provides, in part: "The material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.Civ.P. 1019(a). We have interpreted this rule to mean that "[a] complaint must apprise the defendant of the nature and extent of the plaintiff's claim so that the defendant has notice of what the plaintiff intends to prove at trial and may prepare to meet such proof with his own evidence." **Discover Bank v. Stucka**, 33 A.3d 82, 86-87 (Pa. Super. 2011) (internal quotation marks and citation omitted).

1. *Lake Erie Mortgage and Tuttle's Preliminary Objections*

Instantly, Appellant claims that he stated sufficient facts to establish a breach of contract action, as well as a UTPCPL violation, against Lake Erie Mortgage and Ms. Tuttle; thus, the trial court erred in sustaining their preliminary objections and dismissing Count II of his First Amended Complaint with prejudice. Appellant's Brief at 13, 19. First, regarding his breach of contract claim, Appellant notes that the execution of the Mortgage Broker Fee Agreement and the Mortgage Loan Origination Agreement created a contractual relationship between Appellant and Lake Erie Mortgage, by and through its agent, Ms. Tuttle. *Id.* at 17-18 (citing First Amended Complaint at Exhibits L and M). He further points us to the averments in his First Amended Complaint, in which he asserted that Ms. Tuttle represented to him that she would secure an FHA-approved appraisal meeting the FHA's minimum standard property requirements; that Ms. Tuttle informed him Shattuck was dissatisfied with the appraiser that she had chosen, so Shattuck would select their own appraiser; that Ms. Tuttle assured him Shattuck's appraiser would still perform an appraisal that met FHA standards; and that Appellant relied upon those representations to his detriment. *Id.* at 16.[18]

---

[18] We acknowledge that Lake Erie Mortgage and Ms. Tuttle specifically denied that Ms. Tuttle made any such representations to Appellant. *See* Lake Erie Mortgage and Tuttle's Preliminary Objections at 3 n.2-4. However, for the purposes of our review, we accept Appellant's averments as true. *Donaldson*, 144 A.3d at 100.

Moreover, Appellant avers that with Ms. Tuttle's experience, had she reviewed the appraisal submitted by Lewis, she should have known that it was deficient. *Id.* He contends that Ms. Tuttle's "improper performance" of her contractual obligations to Appellant constituted a breach of contract. *Id.* at 18-19. *See also id.* at 19-20 (asserting that "[h]ad [Ms.] Tuttle … performed her obligations under the contract[,] the mortgage would not have been granted and [Appellant] would not be in the position in which he is today[,] which began on December 12, 2015[,] with the crawl space full of human waste and a house that is deteriorating around him").

Additionally, Appellant argues that Ms. Tuttle's misrepresentations constituted a violation of the UTPCPL's catchall provision, 73 P.S. § 201-2(4)(xxi). *Id.* at 19 (citations omitted). *See also* First Amended Complaint at ¶ 95 (averring that Ms. Tuttle's representations with respect to her knowledge of and experience with FHA mortgages and her assurance that Lewis's appraisal would meet the FHA's minimum standards constituted "unfair and deceptive practices … which created a likelihood of confusion and misunderstanding on the part of [Appellant] in violation of 73 P.S. §[]201-2(4)(xxi)"). He maintains that his First Amended Complaint contains sufficient facts to apprise Lake Erie Mortgage and Ms. Tuttle of what he intended to prove at trial so that they could prepare their defense. *Id.* at 20.

Generally, for a plaintiff to successfully maintain a cause of action for breach of contract, the plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract;

and (3) resultant damages. **Gorski v. Smith**, 812 A.2d 683, 692 (Pa. Super. 2002). Here, Appellant has established the existence of two contracts between himself and Lake Erie Mortgage/Ms. Tuttle — namely, the Mortgage Broker Fee Agreement[19] and the Mortgage Loan Origination Agreement.[20] We agree with the trial court, however, that Appellant has failed to demonstrate a breach of a duty owed to him under either of these contracts. **See** TCOO I at 4 (concluding that "there was no duty owed by Ms. Tuttle or her employer to supervise or vet the Lewis appraisal").

As the trial court explained:

The closest [Appellant] may come to establishing … a duty [owed by the actor to the complainant] is his argument that Tuttle's purported knowledge and experience with FHA[-]secured loans and related appraisals justifies the imposition of a duty to ensure that the Lewis appraisal was conducted properly…. However, [Lake Erie Mortgage and Ms. Tuttle] argue that there was no duty owed by Ms. Tuttle or her employer to supervise or vet the Lewis appraisal. The [c]ourt agrees. [Ms.] Tuttle was a mortgage broker, not a trained appraiser[,] and she certainly did not have the role of appraiser in this matter. She was not a guarantor of Lewis's work, nor was she or her employer in any sort of

_____

[19] The Mortgage Broker Fee Agreement discloses and governs the fees paid to Lake Erie Mortgage for the origination of Appellant's loan. **See** First Amended Complaint at Exhibit L.

[20] The Mortgage Loan Origination Agreement reflects Lake Erie Mortgage's agreement, as an independent contractor, to apply for a residential mortgage loan from a participating lender on behalf of Appellant and governs Lake Erie Mortgage's compensation for assisting Appellant in meeting his financial needs. **See id.** at Exhibit M.

relationship with Lewis that may justify a theory of *respondeat superior*.[21]

*Id.* Absent sufficient facts to establish a breach of a contractual duty owed to him, it is clear that Appellant would not be entitled to recover against Lake Erie Mortgage and/or Ms. Tuttle on a breach of contract theory. Hence, we discern no abuse of discretion or error of law in the trial court's sustaining of Lake Erie Mortgage and Ms. Tuttle's preliminary objections with respect to the breach of contract claim against them.

We disagree, however, with the trial court's finding that Appellant failed to establish a claim under the catchall provision of the UTPCPL. As noted above, the catchall provision of the UTPCPL proscribes "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). *See also Bennett*, 40 A.3d at 154 (explaining that the General Assembly amended the catchall provision in 1996 to broaden the scope of actionable conduct from "fraudulent conduct" to "deceptive conduct[,]" thereby eliminating the requirement of proving fraud to succeed under the UTPCPL). "Any deceptive conduct 'which creates a likelihood of confusion or of misunderstanding can constitute a cognizable claim' under the UTPCPL." *Dixon v. Northwestern Mutual*, 146 A.3d 780, 790 (Pa. Super. 2016) (quoting *Bennett*, 40 A.3d at 154-55). *See also id.*

---

[21] The doctrine of *respondeat superior* allows an employer to be held liable for his employee's negligence, although he was personally without fault. *Shuman Estate v. Weber*, 419 A.2d 209, 215 (Pa. Super. 1980).

(declaring that negligent deception, *e.g.*, negligent misrepresentation, is actionable under the post-1996 catchall provision).

Here, the trial court expressly found "no basis to infer any fraud on the part of [Ms.] Tuttle[.]" TCOO I at 4. It then went on to consider whether Appellant set forth sufficient facts to establish a claim for negligent misrepresentation. ***See id.*** at 3-4 (noting that negligent misrepresentation is actionable under the catchall provision of the UTPCPL). The trial court ultimately concluded that Appellant had failed to establish such a claim, however, because there was no duty owed by Ms. Tuttle or Lake Erie Mortgage to supervise or vet Lewis's appraisal. ***Id.*** at 4. It reasoned that "[n]egligent [m]isrepresentation, as with all forms of actionable [n]egligence, requires the breach of a duty owed by the actor to the complainant." ***Id.*** ***See also id.*** at 3 ("[A n]egligent [m]isrepresentation claim … requires the existence of a duty." (citing ***Bilt-Rite Contractors, Inc. v. The Architectural Studio***, 866 A.2d 270, 280 (Pa. 2005))).

While the trial court is correct in stating that a cause of action in negligence requires a breach of a duty owed to the plaintiff, we deem its reliance on ***Bilt-Rite*** in this matter to be misplaced, as the ***Bilt-Rite*** Court addressed the common law tort of negligent misrepresentation — not negligent misrepresentation in the context of the UTPCPL. In ***Gregg v. Ameriprise Financial, Inc.***, 195 A.3d 930 (Pa. Super. 2018), we made it clear that a lesser, more relaxed standard is applied in determining deceptive

conduct under the UTPCPL than that for fraud or negligent misrepresentation.

*Id.* at 938. As we explained therein:

> Had the General Assembly intended to limit the catchall provision to cover only common law misrepresentation claims, it would have done so in more direct language than "deceptive conduct." 73 P.S. § 201-2(4)(xxi). In the 1996 amendment, legislators could have prescribed only "fraudulent or **negligent** conduct," had they so intended. Instead, they outlawed "**any** … **deceptive** conduct," regardless of a vendor's mental state. *Id.* (emphasis added).
>
> Hence, any deceptive conduct, "which creates a likelihood of confusion or of misunderstanding," is actionable under 73 P.S. § 201-2(4)(xxi), whether committed intentionally (as in fraudulent misrepresentation), carelessly (as in negligent misrepresentation), or with the utmost care (as in strict liability). Whether a vendor's "conduct has the tendency or capacity to deceive … is a lesser, more relaxed standard than that for fraud or negligent misrepresentation." [***Commonwealth v.*** ]*TAP*[ ***Pharmaceutical Products, Inc.***], 36 A.3d [1197,] 1253[ (Pa. Cmwlth. 2011), *reversed on other grounds*, 94 A.3d 350 (Pa. 2014)]. The only thing more relaxed than negligence — regarding a consumer's burden of proof — is strict liability.

*Id.* at 938-39. ***See also id.*** at 939 (adopting the Commonwealth Court's reasoning in ***TAP*** that the 1996 amendment of the catchall provision has "the effect of eliminating the common law state of mind element (either negligence or intent to deceive)").

We further explained in ***Gregg*** that

> a statute imposes one of two types of duty — either (1) strict liability or (2) negligence *per se*. This Court turned to Dean Prosser for delineation between those two categories. Prosser wrote:
>
>> It is entirely possible that a statute may impose an absolute duty, for whose violation there is no recognized excuse…[.] In such a case the defendant may become liable on the mere basis of his violation of the statute. No excuse is recognized,

and neither reasonable ignorance nor all proper care will avoid liability.  Such a statute falls properly under the head of strict liability, rather than any basis of negligence….

[**Bumbarger v. Kaminsky**, 457 A.2d 552, 554 (Pa. Super. 1983)] (quoting W.E. Prosser, TORTS, § 36 at 197 (4th Ed. 1971)).

*Id.* at 939.  "A UTPCPL violation … is not amenable to excuses."  *Id.*

Moreover, we emphasized:

The UTPCPL is for consumer protection.  It undoes the ills of sharp business dealing by vendors, who … may be counseling consumers in very private, highly technical concerns.  … [T]hose consumers may be especially reliant upon a vendor's specialized skill, training, and experience in matters with which consumers have little or no expertise.  Therefore, the legislature has placed the duty of UTPCPL compliance squarely and solely on vendors; they are not to engage in deceitful conduct and have no legally cognizable excuse, if they do.

Thus, we hold that the General Assembly, by "eliminating the common law state of mind element (either negligence or intent to deceive)," *TAP*, 36 A.3d at 1253, imposed strict liability on vendors who deceive consumers by creating a likelihood of confusion or misunderstanding in private, as well as public, causes of actions.  Carelessness or intent, required for negligent or fraudulent misrepresentations, may be absent when perpetrating "deceptive conduct" under 73 P.S. § 201-2(4)(xxi).  Given their varying degrees of requisite intent, a UTPCPL catchall violation and the torts of negligent and fraudulent misrepresentation raise separate legal issues, as a matter of law.

*Id.* at 940.  ***See also Commonwealth by Shapiro v. Golden Gate National Senior Care, LLC***, 194 A.3d 1010, 1023 (Pa. 2018) ("An act or a practice is deceptive or unfair if it has the capacity or tendency to deceive, and neither the intention to deceive nor actual deception must be proved; rather, it need only be shown that the acts and practices are capable of being interpreted in a misleading way.") (internal brackets, quotation marks, and citations

omitted). Nevertheless, "[e]ven with the broadening of the applicability of the catchall provision, in order to prevail on such a cause of action, the UTPCPL plaintiff must still prove justifiable reliance and causation…." **Kirwin v. Sussman Automotive**, 149 A.3d 333, 336 (Pa. Super. 2016). "[W]hether justifiable reliance exist[s] is ordinarily a question of fact." **Id.** at 337.

Instantly, we believe that Ms. Tuttle's representations regarding her knowledge of FHA-insured mortgages and her purported assurance that Lewis's appraisal would comply with FHA minimum property standards — **if** proven to be true — created a likelihood of confusion for Appellant, leading him to believe that Lewis's appraisal did indeed meet the FHA requirements. Moreover, Appellant avers that he justifiably relied on these representations to his own detriment. Thus, we conclude that Appellant pled sufficient facts to establish a plausible cause of action under the catchall provision of the UTPCPL. **See** 73 P.S. § 201-2(4)(xxi); **Kirwin**, 149 A.3d at 336 (noting that justifiable reliance and causation must be proven to prevail on a claim under the UTPCPL's catchall provision); **Bennett**, 40 A.3d at 154-55 (determining that "deceptive conduct which creates a likelihood of confusion or of misunderstanding can constitute a cognizable claim under [73 P.S. §] 201-2(4)(xxi)").

Whether Ms. Tuttle actually made the alleged statements to Appellant, and whether or not Appellant justifiably relied on those statements, are questions of fact for the jury. **See Davis v. Borough of Montrose**, 194 A.3d 597, 605 (Pa. Super. 2018) ("Issues of credibility and conflicts in evidence are

for the trial court to resolve[.]"); **DeArmitt v. New York Life Ins. Co.**, 73 A.3d 578, 593 (Pa. Super. 2013) (stating that the determination of "justifiable reliance is typically a question of fact for a fact-finder to decide"). As such, the trial court's dismissal of the UTPCPL claims against Lake Erie Mortgage and Ms. Tuttle at the preliminary objection stage was premature. Accordingly, we reverse the trial court's ruling to the contrary and remand for further proceedings.

### 2. *Lewis's Preliminary Objections*

Similarly, Appellant avers that he stated sufficient facts in his First Amended Complaint to establish a breach of contract claim against Lewis, as well as a claim for a violation of the UTPCPL's catchall provision. Appellant's Brief at 21, 24. Thus, he argues that the trial court erred in sustaining Lewis's preliminary objections and dismissing Count III with prejudice. **Id.**

With respect to his breach of contract claim, Appellant contends that he "had an implied contract with Lewis based upon his payment of $550 for the appraisal through a check to Shattuck." **Id.** at 24. He states that the purpose of the appraisal was to secure a mortgage loan and opines that "if … Lewis had done a proper appraisal meeting FHA standards[,] the mortgage would undoubtedly not have been given until repairs were made at the cost of the seller. [Appellant] would have had the option to rescind his offer to purchase the property and look elsewhere for a home." **Id.** Additionally, he maintains

that a quasi-contract existed between Lewis and Appellant. *Id.* at 25.[22] *See also id.* (conceding that there is "no direct contractual relationship" between Lewis and Appellant).

Based on our cursory review, it appears that Appellant asserts for the first time on appeal that there was an implied or quasi-contract between himself and Lewis. *See* First Amended Claim at ¶¶ 101-115 (failing to establish the existence of an implied and/or quasi-contract with Lewis and seeking damages only under the UTPCPL);[23] N.T Hearing, 9/5/18, at 1-25

---

[22] "Quasi-contracts or contracts implied in law are to be distinguished from express contracts or contracts implied in fact." *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 449 (Pa. 1969). "A contract implied in fact arises where the parties agree upon the obligations to be incurred, but their intention, instead of expressed in words, is inferred from their acts in the light of the surrounding circumstances." *Stucka*, 33 A.3d at 88 (internal quotation marks and citations omitted). Whereas, "[a] quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *Id.* (citation omitted). *See also Mitchell v. Moore*, 729 A.2d 1200, 1206 (Pa. Super. 1999) (stating that quasi-contracts are "obligations created by law for reasons of justice").

[23] The only reference Appellant makes to a contractual relationship between himself and Lewis is a single assertion that he was a "third[-]party beneficiary of the contract that existed between … Shattuck and … Lewis to provide an FHA[-]approved mortgage appraisal for [Appellant]…." First Amended Complaint at ¶ 111. However, Appellant has waived any such potential breach of contract claim as a purported third-party beneficiary due to his failure to raise this argument and/or develop the issue on appeal. *See In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); *Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) ("We will not ordinarily consider any issue if it has not been set
*(Footnote Continued Next Page)*

(reflecting Appellant's counsel's failure to argue that an implied or quasi-contract existed between Appellant and Lewis). Neither Appellant's statement of the case nor the argument section of his brief contains a "statement of place of raising or preservation of [this] issue[,]" in contravention to Pennsylvania's Rules of Appellate Procedure. *See* Pa.R.A.P. 2117(c); 2119(e). It is not our responsibility to scour the voluminous certified record to prove that Appellant has preserved his claim. *See Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014) (citations omitted). Thus, we are constrained to deem Appellant's breach of contract claim against Lewis waived. *See Newman Development Group of Pottstown, LLC v. Genuardi's Family Market, Inc.*, 98 A.3d 645, 658 n.16 (Pa. Super. 2014) ("A new argument cannot be raised in support of an issue on appeal if it was not first presented before the trial court. Thus, this argument is waived.") (citation omitted).

As for Appellant's UTPCPL claim, Appellant asserts that FHA guidelines required Lewis, as an FHA-approved appraiser, to enter the crawl space "at least to … her neck and shoulders" and to inspect the plumbing system in conducting her appraisal of the Property. Appellant's Brief at 21. Moreover, he avers that Lewis was required to notify the mortgagee (Plaza Mortgage Company) of any deficiencies discovered while conducting the appraisal, but

---

forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived.") (citations omitted). Moreover, we will not develop arguments on behalf of an appellant. *See Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014).

that she failed to do so. *Id.* (citation omitted). *See also id.* at 22 (claiming that if Lewis had entered the crawl space at least to her neck and shoulders, she would have discovered that it was damp and contained human waste); *id.* at 23 (inferring that Lewis performed a "drive by" appraisal, contrary to FHA/HUD guidelines); *id.* at 24 (stating that, "if Lewis had done an inspection[,] it would have disclosed that the metal roof was not completed, the floors in the kitchen and living[]room were spongy, and the commode was not secured"). Appellant claims that Lewis's failure to notify the mortgagee that the Property did not comply with FHA minimum property requirements constituted "an act of misrepresentation[,]" in violation of the UTPCPL's catchall provision. *Id.* at 24 (citing 72 P.S. § 201-2(4)(xxi)). *See also id.* at 26 (adding "[i]t is inconceivable that [Appellant] would have gone through with the purchase of the [P]roperty had he known that the crawl space contained human waste").

In sustaining Lewis's preliminary objections, the trial court once again concluded that Appellant would not be able to recover against Lewis under the catchall provision based on its determination that Lewis did not owe a duty to Appellant. *See* TCOO I at 5 ("[T]he court finds that there was no duty owed by Lewis to [Appellant]. … [A]s with Tuttle, there is no indication of fraud and no negligent misrepresentation without a duty owed."). However, as we stated *supra*, a lesser, more relaxed standard is applied in determining deceptive conduct under the UTPCPL than that for fraud or negligent misrepresentation. *See Gregg*, 195 A.3d at 938. "[A]ny deceptive conduct,

'which creates a likelihood of confusion or of misunderstanding,' is actionable under 73 P.S. § 201-2(4)(xxi), whether committed intentionally (as in fraudulent misrepresentation), carelessly (as in negligent misrepresentation), or with the utmost care (as in strict liability)." *Id.* "An act or practice is deceptive … if it has the capacity or tendency to deceive, and neither the intention to deceive nor actual deception must be proved; rather, it need only be shown that the acts and practices are capable of being interpreted in a misleading way." *Golden Gate National Senior Care, LLC*, 194 A.3d at 1023.

Here, Lewis's purported failure to comply with FHA guidelines in performing the appraisal and her failure to discover and/or report any alleged defects to the mortgagee — **if** proven to be true — could certainly have misled Appellant to believe that the Property met FHA minimum standards and that no visible deficiency of the plumbing system existed. Again, we emphasize that the purpose of the UTPCPL is to protect consumers. *Gregg*, 195 A.3d at 940. Where the appellant is a first-time buyer, as in the case *sub judice*, it is likely that he would rely on the appraiser's specialized skill and expertise and that he may therefore have been confused by Lewis's conduct. *See id.* Moreover, Appellant claims that he detrimentally relied on Lewis's appraisal. *See* First Amended Complaint at ¶ 112 (Appellant's averring that Lewis's holding herself out as being capable of performing an FHA appraisal induced him to close on the real estate transaction); *id.* at ¶¶ 114-15 (Appellant's claiming that he incurred expenses in excess of $31,000 for the removal of

the sewage and treatment of mold as a result of Lewis's failure to perform a proper appraisal and/or to report deficiencies in the Property). As such, we believe that Appellant pled sufficient facts to establish a plausible cause of action under the UTPCPL's catchall provision. *See* 73 P.S. § 201-2(4)(xxi); **Kirwin**, 149 A.3d at 336.

Whether Lewis properly inspected the crawl space in compliance with FHA guidelines and/or whether she failed to report any defects to the mortgagee are questions of fact for the jury. ***See Davis***, 194 A.3d at 605. ***See also*** Lewis's Preliminary Objections at ¶ 27 ("[T]he appraisal … specifically identifies that the foundation of the [P]roperty has a crawl space and that … [Lewis] identified and inspected this space, with no physical defects found.") (citing First Amended Complaint at Exhibit I). Additionally, whether Appellant was justified in relying on Lewis's appraisal and/or her purported misrepresentation is also an issue to be determined by the fact-finder. **DeArmitt**, 73 A.3d at 593. Hence, we conclude that the trial court prematurely dismissed the UTPCPL claim against Lewis at the preliminary objections stage. Accordingly, we reverse its ruling to the contrary and remand for further proceedings.

B. *Issues 3 & 4*

In his third and fourth issues, Appellant contests the trial court's granting of summary judgment against him. Our role on appellate review is clear:

Our scope of review of an order granting summary judgment is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

**DeArmitt**, 73 A.3d at 585 (citations and quotation marks omitted). "[T]he issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals." **Valley National Bank v. Marchiano**, 221 A.3d 1220, 1222 (Pa. Super. 2019) (quoting **Summers v. Certainteed Corp.**, 997 A.2d 1152, 1159 (Pa. 2010)).

### 1. *Woods' Motion for Summary Judgment*

Appellant's only claim against Woods was that Woods failed to deliver a Seller's Disclosure Statement to Appellant prior to the transfer of the Property, in compliance with the RESDL. **See** First Amended Complaint at ¶¶ 116-22.[24] As noted *supra*, the trial court granted summary judgment in favor of Woods on this claim.

---

[24] Appellant did not raise any claims regarding the contents of the Seller's Disclosure Statement, *e.g.*, failure to disclose a known material defect in the Property. **See** 68 Pa.C.S. §§ 7303, 7304. **See also** First Amended Complaint at ¶¶ 116-22.

In explaining its decision, the trial court found that Woods originally received the disclosure form from Agent Wilkins' office at the time he listed his home for sale and noted that Woods does not claim to have personally sent the Seller's Disclosure Statement to Appellant. TCOO II at 2. Rather, Woods indicated that he gave the form to Shattuck after completing it and that Shattuck subsequently informed him that Appellant had received it. *Id.* The trial court opined that because Appellant's agent and Woods' agent were both employed by Shattuck, Woods' delivery of the completed disclosure form to Shattuck satisfied his obligations under the RESDL. *Id.* at 3. *See also* 68 Pa.C.S. § 7305(a) (requiring the seller to "deliver the property disclosure statement to the buyer … **or the buyer's agent**") (emphasis added). The court concluded that Appellant "clearly received the seller disclosure statement because the record indicates that … [Appellant] signed the statement months before [the] closing." TCOO II at 3. It opined that, "[u]nder the circumstances[,] where there was delivery to the employer of the buyer's agent and … [Appellant] signed the disclosure statement before closing, delivery of the Seller['s] Disclosure Statement under Section 7305(a) is not a genuine issue of material fact." *Id.* (cleaned up).

Appellant unartfully advances that the trial court erred in granting Woods summary judgment "in violation of the provisions of Pa.R.C[iv].P. 1035.3(a) governing the credibility of the testimony of Woods under the *Nanty-Glo* decision which raises the issue of material fact for the actions dependant [*sic*] upon the credibility and demeanor of the witnesses who will

testify at trial." Appellant's Brief at 27 (cleaned up).[25] Essentially, Appellant appears to argue that the trial court based its decision on Woods' testimony — that Woods believed his agent delivered the disclosure statement to Appellant — in violation of the ***Nanty-Glo*** rule. ***Id.*** at 27-28; ***see also id.*** at 31 ("This is clearly oral testimony which is in the purview of the finder of fact to determine the truth and veracity of the witnesses and constitutes a genuine issue of material fact."). He further notes that the disclosure statement attached to Woods' motion for summary judgment contains only Woods' signature and that Woods admitted "he did not mail or deliver [the Seller's Disclosure Statement] to [Appellant] but only gave it to Shattuck...." ***Id.*** at 33. ***See also id.*** (arguing that "[t]here is no evidence of record to establish that Shattuck ... ever supplied the Seller's Disclosure Statement to [Appellant].

_____

[25] Pennsylvania Rule of Civil Procedure 1035.3(a) provides, in part:

> Except as provided in subdivision (e), the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying ... one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion...[.]

> *Note*: If the moving party has supported the motion with oral testimony only, the response may raise the defense that there is a genuine issue of material fact because the cause of action is dependent upon the credibility and demeanor of the witnesses who will testify at trial. ***See Nanty-Glo***[, ***supra***] ...; ***Penn Center House, Inc. v. Hoffman***, ... 553 A.2d 900 ([Pa.] 1989).

Pa.R.Civ.P. 1035.3(a)(1).

This will all depend upon evidence introduced at trial. Oral statements are left for the finder of fact and constitute genuine issues of material fact for the fact[-]finder."). Finally, Appellant surmises that delivery of the disclosure statement by Woods to Shattuck did not satisfy the delivery requirements imposed on Woods by the RESDL and, thus, the entry of summary judgment in favor of Woods was precluded. *Id.* at 34; *see also id.* at 31 ("The trial court completely ignored the fact that … Houghwot was the buyer's agent and … Wilkins was the seller's agent."). No relief is due on this claim.

First, with respect to Appellant's argument that the ***Nanty-Glo*** rule precludes summary judgment in favor of Woods, we recognize that, "[i]n determining the existence or non-existence of a genuine issue of a material fact, courts are bound to adhere to the rule of ***Nanty-Glo***…, which holds that a court may not summarily enter a judgment where the evidence depends upon oral testimony." ***Penn Center House, Inc.***, 553 A.2d at 903. ***See also id.*** ("Testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury.") (citation omitted). However, in the case *sub judice*, the trial court did not solely rely on Woods' testimony in reaching its decision. The trial court also clearly considered the fact that the record contains a copy of the Seller's Disclosure Statement **signed by Appellant** months before the closing. ***See*** TCOO II at 4 (noting that Woods' motion for summary judgment references the disclosure statement signed by Appellant, which was entered

into the record by Shattuck); *id.* at 3 (concluding that there is no genuine issue of material fact whether Woods fulfilled the delivery requirement under Section 7305(a) of the RESDL "where there was delivery to the employer of [Appellant's] agent **and** [**Appellant**] **signed the disclosure statement before closing**") (emphasis added).

Moreover, while Appellant is correct in stating that the copy of the Seller's Disclosure Statement attached to Woods' motion for summary judgment only contained Woods' signature, the record also contains a copy of the disclosure statement signed by Appellant on August 14, 2015, prior to the transfer of the Property. *See* Shattuck's Motion for Summary Judgment at Exhibit B; *see also* Woods' Motion for Summary Judgment at ¶ 12 (referencing the same).[26] Absent any evidence to the contrary, the authenticity of Appellant's signature is presumed. *See* 80 C.J.S. Signatures § 17 ("There is a presumption that a written signature on an instrument was written by the purported signer."). Appellant did not file a written response to Woods' motion for summary judgment, nor does he provide any rebuttal on appeal regarding the validity of his signature.[27] He merely baldly states

_____

[26] The Agreement of Sale reflects Appellant's signature dated August 14, 2015, and Woods' signature dated August 22, 2015. *See* Agreement of Sale at 13. The closing took place on October 16, 2015. First Amended Complaint at ¶ 24.

[27] We observe that Appellant's counsel indicated during oral argument that Appellant did not sign the Seller's Disclosure Statement. *See* N.T. Hearing, 3/16/22, at 12 ("[Appellant] maintains that he did not sign it."); *id.* at 12-13
*(Footnote Continued Next Page)*

that he never received the document before closing, *see* Appellant's Brief at 29 (citing First Amended Complaint at ¶ 39), which is not sufficient to raise an issue of material fact. *See Nationstar Mortgage, LLC v. Inch*, 2019 WL 3458745, at *4-6 (Pa. Super. July 31, 2019) (unpublished memorandum) (explaining that, absent any expert opinion rendered within a reasonable degree of certainty that the defendants did not sign the note and/or mortgage,

---

("[H]e'll testify that he never signed it. We don't know how the signature got on it…."); *id.* at 17 (Appellant's counsel's responding to the court's statement that the document appears to have been signed by Appellant in August, two months before the closing: "Well, Your Honor, I think that's a genuine issue of material fact. Did he sign it then or didn't he? … He's claiming he did not. He's claiming he never signed it. He never [saw] it until we got it in discovery."). However, Appellant does not raise an issue regarding the validity of his signature in his Pa.R.A.P. 1925(b) concise statement or in his Statement of Questions Presented, nor does his appellate brief contain any discussion regarding the same. As Appellant has abandoned his argument on appeal that he did not sign the document, we are constrained to deem it waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Rule 1925(b) Statement … are waived."); *Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation[. T]herefore, we look first to the language of that order.") (internal quotation marks and citations omitted); Trial Court Order, 8/22/23, at 1 (unnumbered page) (warning Appellant that "[a]ny issue not properly included in the statement timely filed and served in accordance with Rule 1925(b) shall be deemed waived"). *See also* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); *Coulter*, 94 A.3d at 1088 ("This Court will not act as counsel and will not develop arguments on behalf of an appellant."); *Krebs*, 893 A.2d at 797 ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived.") (citations omitted).

the defendants' denial that the signatures were theirs by itself would fail to overcome the presumption that the signatures were valid).[28]

We agree with the trial court that there is no genuine issue of material fact regarding whether Woods delivered the Seller's Disclosure Statement to Appellant prior to the transfer of the Property in compliance with his obligations under the RESDL, as the record contains a copy of the Disclosure Statement signed by Appellant prior to the completion of the Agreement of Sale and months prior to the closing. Accordingly, we affirm the trial court's March 21, 2022 order granting summary judgment in favor of Woods.

2. *Shattuck's Motion for Summary Judgment*

As set forth in more detail *supra*, Appellant alleged in his complaint that Shattuck failed to deliver the Seller's Disclosure Statement to him as required under the RESDL and that Shattuck engaged in deceptive conduct which constituted a violation of the UTPCPL's catchall provision. **See** First Amended Complaint at ¶¶ 39-43, 50-57, 69-70. The trial court granted summary judgment in favor of Shattuck on these claims. **See** Order, 7/5/23 (single page); TCO II (incorporating by reference the trial court's September 9, 2022 opinion).

In support of its decision, the trial court reiterated that Woods gave the signed Seller's Disclosure Statement to Shattuck after he completed the form,

---

[28] **See** Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

and that by doing so, Woods satisfied his obligation under Section 7305(a). TCOO III at 4 (noting that both Appellant's agent and Woods' agent were employed by Shattuck and that Section 7305(a) can be satisfied through delivery to the buyer's agent). The trial court then opined:

> [Appellant] clearly received the Seller['s] Disclosure Statement because the record indicates that [Appellant] signed the statement months before closing. No evidence has been presented about any differences in the versions of the Seller['s] Disclosure Statements included in the record other than which parties' signatures or initials are included. Under the circumstances where there was delivery to the employer of the buyer's agent and [Appellant] signed the Disclosure Statement before closing, delivery of the Seller['s] Disclosure Statement under Section 7305(a) is not a genuine issue of material fact.

*Id.* at 4-5 (cleaned up).

Appellant argues that in granting Shattuck summary judgment, the trial court repeated the same error that it made in granting Woods summary judgment — relying on Woods' testimony that he gave the completed Disclosure Statement to Shattuck and concluding that Woods' thereby satisfied his obligation under the RESDL. Appellant's Brief at 35, 37-38. Appellant again argues that the **Nanty-Glo** rule precludes the entry of summary judgment. *Id.* at 38-39. He also confusingly avers that "nowhere in the record" is there a Seller's Disclosure Statement bearing the signature of Appellant "until after the filing of the amended complaint when it was produced by Shattuck in response to discovery, long after the [A]greement of [S]ale was signed." *Id.* at 38. He suggests, rather, that "what is clearly established is that Shattuck … had an executed Seller's Disclosure Statement

signed by both Woods and [Appellant] in her file but … that she never delivered it to the buyer[,]" giving rise to a cause of action against her under the RESDL. *Id.*

First, we note that the RESDL imposes a duty on the **seller** to disclose any known material defects to the buyer. *See* 68 Pa.C.S. § 7303 ("Any **seller** who intends to transfer any interest in real property shall disclose to the buyer any material defects with the property known to the seller….") (emphasis added). The seller may satisfy this obligation by delivering a disclosure statement to the buyer's agent. *See* 68 Pa.C.S. § 7305(a) ("The seller shall deliver the property disclosure statement … to the buyer **or the buyer's agent**.") (emphasis added). The only obligation expressly imposed on the seller's agent by the RESDL is the duty to provide the disclosure form to the seller. *See* 68 Pa.C.S. § 7313(c) ("**Duty to provide form.—**An agent representing a seller must advise a seller of the seller's responsibilities under this chapter and must provide the seller with a copy of the form of property disclosure statement.").[29]

_____

[29] Section 7313 further provides: "Nothing in this chapter shall abrogate or diminish the responsibility of a licensee under the [RELRA]." 68 Pa.C.S. § 7313(b). In support of Appellant's argument that Shattuck violated the RESDL, he alleged that Shattuck, as his agent, owed a duty to him "to exercise professional skill and care to deal honestly and in good faith, [and] to provide advice to [him] as [the] buyer[,]" pursuant to the RELRA. *See* First Amended Complaint at ¶ 66 (citing 63 P.S. §§ 455.101; 455.606; 455.606(a)-(d)). On appeal, Appellant contends that "Shattuck violated the good faith provisions that she exercise professional skill and care … under the [RELRA] … by her failure to supply [him] with the Seller's Disclosure Statement which was in her
*(Footnote Continued Next Page)*

We agree with the trial court that there is no genuine issue of material fact as to whether Shattuck fulfilled its obligations under the RESDL, as Shattuck produced a copy of the completed Seller's Disclosure Statement signed by both Woods and Appellant. Moreover, other than Appellant's bald assertion that he never signed the disclosure statement, *see* Appellant's Brief at 38, Appellant has failed to produce any evidence sufficient to rebut the presumption of the validity of his signature on the document. **See** 80 C.J.S. Signatures § 17; **Inch**, 2019 WL 3458745, at *4-6. In fact, during oral argument, Appellant's counsel stated: "What we believe the testimony will be at trial and what we allege is that, yes, [Appellant] went to Shattuck's office and was presented with a Seller's Disclosure Statement and he signed it, but he never got it." N.T. Hearing, 6/9/22, at 13 (cleaned up). **See also id.** at 16 (Appellant's counsel's admitting that Appellant "actually signed [the Seller's Disclosure Statement], yes"). It has long been established that "[i]f one who signs a paper can read and write, and is under no duress when he or she signed it, 'the law presumes that under such circumstances it is signed

possession, prior to the execution of the agreement to transfer." Appellant's Brief at 12. The trial court did not specifically address these alleged RELRA violations in its granting of Shattuck's motion for summary judgment. However, to the extent that Appellant raises this issue on appeal, we discern that no relief is warranted on this basis. Unlike the UTPCPL, the RELRA "does not contemplate private actions for money damages as an enforcement mechanism and, consequently, does not create a private cause of action." **Schwarzwaelder v. Fox**, 895 A.2d 614, 620 (Pa. Super. 2006). Rather, the Act "specifically empowers the Pennsylvania Real Estate Commission to police related transactions." **Id.** (citing 63 P.S. § 455.406(1)).

with a full knowledge of its contents.'" *In re McCready's Estate*, 175 A. 554, 557-58 (Pa. 1934) (citation and internal brackets omitted).

Moreover, we reject Appellant's argument that the *Nanty-Glo* rule precludes summary judgment here. Based on our review of the record, it is clear that the trial court's decision was not based solely on oral testimony. Rather, it relied heavily on the copy of the Seller's Disclosure Statement produced by Shattuck, which contained Appellant's signature. *See* TCOO III at 4 ("[Appellant] clearly received the [S]eller['s] [D]isclosure [S]tatement because the record indicates that [he] signed the statement months before closing."); *id.* at 5 (noting that Shattuck produced "a version of the Seller['s] Disclosure Statement signed and initialed by both parties") (cleaned up). Based on the foregoing, we affirm the trial court's granting of summary judgment in favor of Shattuck on this claim.

Regarding Appellant's UTPCPL claim against Shattuck, the trial court opined:

> [Appellant] claims that [the] UTPCPL was violated due to representations made by [Shattuck] about the appraiser[,] Kim Lewis. This [c]ourt has previously found that … Lewis was an FHA[-]authorized appraiser. When dismissing [Ms.] Tuttle from this matter, this [c]ourt also found that
>
>> it was reasonable for [Ms.] Tuttle to expect a proper appraisal[,] and the [c]ourt f[ound] no basis to infer fraud on the part of [Ms.] Tuttle which would support an action under the [UTPCPL's] "catchall provision" as cited by [Appellant] in the First Amended Complaint.
>
> [TCOO I at 4.] It would also be reasonable for [Shattuck] to expect a proper appraisal from an authorized appraiser. [Appellant] does not specifically state what representations were

- 54 -

made by [Shattuck] about the appraiser. Therefore, [Appellant's] fraud claim under the UTPCPL is impermissibly vague. Even if [Shattuck] referred [Lewis] to complete the appraisal, [Shattuck is] not liable for the referral as Pennsylvania does not have a negligent referral cause of action.

TCOO III at 6.

Appellant does not contest the trial court's decision with respect to his UTPCPL claim against Shattuck on appeal, nor did he raise such a question in his Rule 1925(b) statement. Other than briefly mentioning that his complaint alleged a violation of the UTPCPL "for fraudulent representations by Shattuck[,]" **see** Appellant's Brief at 11, his argument focuses solely on the trial court's granting of summary judgment with respect to the RESDL claim. **See id.** at 35-39. Thus, we deem any claim regarding the trial court's awarding of summary judgment in favor of Shattuck on the UTPCPL claim to be waived. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Rule 1925(b) Statement … are waived."); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); **Krebs**, 893 A.2d at 797 ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived.") (citations omitted). Moreover, we will not develop arguments on behalf of an appellant. **See Coulter**, 94 A.3d at 1088.

Finally, we deem Appellant's claim that the trial court erred in denying his request to supplement the record to be waived for failure to develop the

issue. **See** Appellant's Brief at 35 (Appellant's asserting that the trial court erred "by denying [Appellant's] request to supplement the record based on the deposition of Shattuck as provided by Pa.R.C[iv].P. 1035.3(2)(C) [*sic*] to depose Shattuck and [Agent] Wilkins[,] which depositions had been thwarted by Shattuck"). The argument section of Appellant's brief is devoid of any discussion or legal analysis of this claim. **See** Pa.R.A.P. 2119(a); **Estate of Haiko v. McGinley**, 799 A.2d 155, 161 (Pa. Super. 2002) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority.") (citations omitted). **See also In re S.T.S., Jr.**, 76 A.3d 24, 42 (Pa. Super. 2013) ("When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. [M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.") (internal citations and quotation marks omitted).

In sum, we affirm the trial court's July 5, 2023 and March 21, 2022 orders granting summary judgment in favor of Shattuck and Woods, respectively. Additionally, we affirm the trial court's October 9, 2018 order to the extent that it sustains the preliminary objections with respect to the breach of contract claims against Lake Erie Mortgage, Ms. Tuttle, and Lewis. However, we reverse the October 9, 2018 order to the extent that it sustains the preliminary objections regarding the UTPCPL claims against Lake Erie Mortgage, Ms. Tuttle, and Lewis, and remand for further proceedings consistent with this memorandum.

Orders affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

7/16/2024